Aaron BLAKE; Ruth Blake; Aaron Blake, D.D.S., P.C. Employees Pension Trust; Aaron Blake, D.D.S., P.C. Retirement Trust, Plaintiffs–Appellants,

v.

Daniel W. DIERDORFF; Harry L. Summers; Tadashi Fujita; John McKenna Case; Allan Koljonen; Richard C. Raimann; Leff & Mason; Ernest Leff; John Grosvenor; Van D. Greenfield; Sun Savings and Loan Association; Arthur Young & Company; and Kenneth Clare, Defendants–Appellees.

No. 87–5819.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1988.

Decided Sept. 8, 1988.

Simon J. Freedman and William S. Lerach, Milberg Weiss Bershad Specthrie & Lerach, San Diego, Cal., for plaintiffs-appellants.

Scott L. Metzger, Duckor & Spradling, Alex C. McDonald, McDonald, Hecht & Solberg, David Pendarvis, Gibson, Dunn &

Crutcher, San Diego, Cal., Eugene R. Erbstoesser, Arthur Young & Company, Associate General Counsel, New York City, Michael I. Goode, Newport Beach, Cal., for defendants-appellees.

Daniel W. Dierdorff, La Jolla, Cal., in pro. per.

Before FERGUSON, BEEZER and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

The appellants, Aaron and Ruth Blake and their retirement and pension trusts (Blake), appeal the district court's dismissal of their multiple defendant civil RICO action and their claim under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Subsequent to our decision in *In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987), which holds there is no private right of action under section 17(a), the appellants have withdrawn the appeal of the dismissal of their section 17(a) claim. We affirm the dismissal of defendants Arthur Young, Kenneth Clare, Greenfield, and Grosvenor on the RICO claim.

## FACTS

Blake made numerous purchases of stock in Sun Savings & Loan Association (Sun Savings) between February 1984 and October 1984. After the purchases, the stock value declined until July 18, 1986, when the Federal Home Loan Bank Board placed Sun Savings in receivership and appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as its sole receiver for the purpose of liquidation. Blake filed an action in California Superior Court against Sun Savings, the accounting firm of Arthur Young & Company and its employee, Kenneth Clare (Arthur Young), the law firm of Leff & Mason and its attorneys, John Grosvenor and Ernest Leff, members of the Sun Savings Board of Directors Allan Koljonen, John Grosvenor, Van Greenfield, Harry Summers, Tadashi Fujita, John Case, and Richard Raimann, and Daniel Dierdorff, a founder, president, chief executive officer, and chair of the Board of Directors of Sun Savings.[1] The FSLIC was substituted for Sun Savings. The case was removed to the United States District Court for the Southern District of California.

Blake filed an amended complaint in federal court, asserting five separate claims: fraud and deceit against all defendants (Count I), negligent misrepresentation against all defendants (Count II), violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d), against Sun Savings, Leff & Mason, and Arthur Young (Count III), RICO violations against all defendants except Sun Savings (Count IV), and violation of section 17(a) of the Securities Act of 1933 (Count V). In support of these claims Blake alleged that during 1983 and 1984 the defendants conspired and schemed to defraud Blake into purchasing and holding Sun Savings stock. The complaint alleges that the scheme and conspiracy were effectuated over a fourteen month period through misrepresentations made in person, over the telephone, and in press releases, annual and quarterly reports, and offering statements concerning Sun Savings' financial condition and the advisability of owning Sun Savings stock.

The district court dismissed, without opposition, Blake's claims against the FSLIC. The remaining defendants moved for dismissal of the complaint pursuant to Federal Rules of Civil Procedure 9(b) for lack of specificity in the allegations of fraud and 12(b)(6) for failure to state a claim upon which relief could be granted. Arthur Young argued in support of its motion to dismiss that its single audit did not constitute a pattern of racketeering activity. The district court dismissed the RICO claims against Arthur Young "for reasons given by counsel." It dismissed the RICO claims against the other defendants because Blake "failed to allege that any de-

---

1. Dierdorff, Case, and Raimann filed no briefs on appeal.

fendant engaged in or conspired to engage in a 'pattern of racketeering activity' as required by 18 U.S.C. § 1962." The district court held that two or more schemes were necessary to meet the pattern requirement. Because Blake had alleged only one scheme, the court found that the requirement was not met. It also found Blake had consented to dismissal of Count III, one of the RICO claims. Because the FSLIC was no longer a party, and because Counts I and II alleged only claims that arose under state law, the district court remanded the action back to the Superior Court of San Diego County.

Blake timely appealed the dismissal of Counts III and IV, the RICO claims, and Count V, the Securities Act claim. The Securities Act claim has been withdrawn. Blake does not argue on appeal that the district court erroneously found the appellants consented to the dismissal of Count III. Therefore, only Count IV, a RICO claim, is before us.

## STANDARD OF REVIEW

This court reviews de novo the district court's dismissal for failure to state a claim. *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). All material allegations in the complaint are accepted as true and all doubts are resolved in favor of the plaintiff. *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 834–35 (9th Cir.1980). We may affirm the dismissal "on any basis supported by the record even if the district court did not rely on that basis." *Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986).

## DISCUSSION

■ The district court dismissed the RICO claim against all defendants based on its conclusion that a "pattern of racketeering activity" requires more than one fraudulent scheme or criminal episode. This view was rejected by this circuit after the district court rendered its decision:

[I]f a defendant commits two or more predicate acts that are not isolated events, are separate in time, and are in furtherance of a single criminal scheme, then RICO's pattern requirement is satisfied.

*Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 193 (9th Cir.1987).

■ Most of the defendants do not dispute that the allegations of Blake's complaint meet this description. However, they argue the dismissal may be affirmed for failure to meet Federal Rule of Civil Procedure 9(b)'s requirement to plead fraud with particularity.

"[P]leading is sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Semegen v. Weidner,* 780 F.2d 727, 735 (9th Cir.1985) (quoting *Gottreich v. San Francisco Inv. Corp.,* 552 F.2d 866 (9th Cir.1977)).

Count IV of the amended complaint, directed against all defendants except Sun Savings for violation of RICO, alleges in relevant part:

58. Defendants were, at all times relevant to the events alleged herein, associated with an enterprise engaged in and the activities of which affected interstate commerce. That enterprise is Sun.

59. The defendants named in this Cause of Action conspired to conduct and to participate in the conduct of the affairs of the enterprise described in paragraph 58 and conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through the pattern of racketeering activity described and set forth in paragraph 55, which is herein incorporated by reference.

60. As a direct and proximate result of defendants' illegal activities violative of RICO, plaintiffs have suffered substantial loss and damage to their business and property, entitling them to recover treble damages against defendants and their costs of suit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

Paragraph 55 of the amended complaint states:

The defendants named in this Count conspired to conduct and to participate in the conduct of the affairs of the enterprise described in paragraph 59 and conducted and participated, directly and indirectly, in the conduct of the affairs of said enterprise through a pattern of racketeering activity consisting of repeated acts of mail fraud violative of 18 U.S.C. § 1341, repeated acts of wire fraud violative of 18 U.S.C. § 1343, and repeated acts of fraud in the purchase and sale of securities. These acts all occurred after RICO was enacted and within 10 years of one another. Each of defendants' racketeering activities was taken for the purpose of furthering defendants' common scheme to inflate the price of Sun guarantee stock and defraud the plaintiffs ... and each such act had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting similar victims, and thus constituted a pattern of racketeering activity within the meaning of RICO. The racketeering activities engaged in by the defendants and the other participants in the enterprise included, but are not limited to the mailing of false and misleading reports, including false financial statements, to plaintiffs, and the mailing of false and misleading press releases and newsletters.

Paragraph 47 of the complaint sets forth the general allegations of conspiracy:

For the purpose of inducing plaintiffs to purchase and hold Sun's guarantee stock and with intent to deceive plaintiffs, the defendants employed a scheme and conspiracy to defraud as part of which said defendants made and participated in making of misrepresentations of fact to plaintiffs. Said representations were not true and defendants did not believe them to be true. Further, defendants concealed the true facts and being bound to disclose, omitted to state material facts.... Said acts by defendants were fraudulent, oppressive and malicious.

With respect to agency, paragraph 10 of the complaint states:

At all times mentioned herein, each of the defendants has been engaged in a conspiracy and common course of conduct, acting in concert with the other defendants and aiding and abetting one another to accomplish the wrongs complained of. Each of the defendants was the agent of each of the remaining defendants and was at all times mentioned herein acting within the course and scope of the agency. Each of the defendants is liable as a direct participant in, co-conspirator and an aider and abettor of, the wrongs complained of herein.

### A. The Director Defendants' Liability

With respect to actions alleged against a group that is in control of publishing information,

[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group published information," it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987) (citations omitted). Although in *Wool* only officers were named as defendants, *Wool*'s presumption of collective action when there is misleading "group published information" is equally applicable to members of a board of directors in a corporate fraud action.

Blake's allegations of fraud describe issuance of false and misleading corporate reports, press releases, and offering circulars. The complaint provides, in nineteen separate paragraphs, the date of each of these publications, specific descriptions of the representations made, the reasons for their falsity, and, where possible, the role of the individual defendants in preparation and dissemination. This is sufficient to meet Rule 9(b) requirements.

■ The director defendants also argue that the complaint fails to allege the predicate acts of mail fraud with the requisite specificity because Blake has not alleged that any defendant devised the scheme to defraud or had specific intent to defraud.

In *Sun Savings,* we required each element of mail fraud to be pled with particularity:

> To allege a violation of the mail fraud statute, plaintiff must show that (1) defendant devised a scheme or artifice to defraud, (2) defendant used the mails in furtherance of the scheme; and (3) defendant did so with the specific intent to deceive or defraud.

825 F.2d at 195. Paragraph seven of the complaint alleges:

> The ... director defendants, because of their positions of control and authority as principal executive operating officers and directors of Sun, were able to and did, directly or indirectly control the contents of various annual and quarterly financial reports, public statements and press releases of Sun. These defendants had a duty to promptly disseminate accurate and truthful information with respect to Sun's business, operations, financial condition and management practices to Sun's shareholders including the plaintiffs, so they would have truthful and accurate information. The defendants participated in the alleged wrongdoing, in part, in order to continue and prolong the illusion of Sun's continued growth, to inflate the publicly reported assets and earnings of Sun and conceal the true extent and nature of its loan losses, dangerous financial practices and lack of controls, and to conceal the adverse facts concerning Sun's operations and loans so that they could (i) protect their executive and/or directorship positions and the substantial compensation and/or prestige they obtained thereby; (ii) obtain extra and or bonus compensation; and (iii) conceal and cover up their own prior misconduct and mismanagement of Sun and avoid being held responsible therefore.

Under *Wool* it is "reasonable to presume" that the corporate scheme to defraud was collectively devised by the director defendants. *See Wool,* 818 F.2d at 1440. Allegations of specific intent "need not be made expressly." *Sun Savings,* 825 F.2d at 195. Intent is shown by "examining the scheme itself." *Id.* at 196 (citations omitted). Blake has alleged the director defendants disseminated information to potential and existing Sun Savings stockholders that falsely portrayed Sun Savings' financial condition. Thus, the complaint adequately alleges that these defendants devised a scheme and intended to defraud.

■ *Greenfield Liability.* One of the members of Sun Savings' board of directors, Van Greenfield, asserts that the complaint fails to allege actions on his part sufficient to constitute a pattern of racketeering. According to the allegations of the complaint, Greenfield served as a Sun Savings director beginning in October 1984. Sometime after his appointment to the board, but before October 20, 1984, Greenfield told Blake's investment advisor, Robert Blake, that Sun Savings was an excellent investment opportunity and that the price of its stock would increase. When Greenfield made these statements, a partnership in which he was a partner, Greenfield Partners, had agreed in principle to invest $12 million in Sun Savings. After October 20, 1984, Sun Savings' true financial condition became publicly known. As a result, Greenfield's partnership did not invest in Sun Savings. All the allegedly false statements made by Sun Savings or its board of directors were made before Greenfield joined the board.

Because Greenfield did not join the board until October 1984, the *Wool* presumption that corporate statements result from collective action is inapplicable to him. *See Wool,* 818 F.2d at 1440. The complaint must allege individual actions by Greenfield sufficient to constitute a pattern of racketeering activity.

Two or more predicate acts are required to satisfy RICO's pattern requirement. *Sun Savings,* 825 F.2d at 193. The complaint alleges only one possible predicate

act by Greenfield: his misstatement to Robert Blake that Sun Savings was a good investment. Thus, the complaint fails to state a RICO claim against Greenfield.

### B. *The Accountants' Liability*

■ Arthur Young, Sun Saving's independent accounting firm, moved for dismissal of Blake's RICO claims, asserting its single, independent audit in 1983 did not constitute a pattern of racketeering activity. The district court orally granted the motion "for reasons given by counsel."

An audit encompasses all acts necessary for preparation of the audit report, including review of confidential documents and information, acquisition of knowledge to conduct the audit, and issuance of the audit certification. *See Eastern Corporate Fed. Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1536 (D.Mass. 1986), *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418, 1420–21 (W.D.Okla.1985). To state a RICO claim, the complaint must allege Arthur Young's extensive participation in the enterprise's affairs, beyond conducting an annual audit. *Ahern v. Gaussoin*, 611 F.Supp. 1465, 1494 (D.Or. 1985), *see also Bank of America Nat'l Trust & Sav. Ass'n v. Touche Ross & Co.*, 782 F.2d 966, 970–71 (11th Cir.1986) (accountants provided numerous false financial statements).

The complaint alleges Arthur Young prepared and certified Sun Saving's 1983 financial statements. It alleges that this preparation was not done in accordance with generally accepted auditing standards. It alleges Arthur Young knew about a checking account Dierdorff opened at Sun Savings in the name of a fictitious person, but did not tell Sun Saving's Board of Directors.[2] It also alleges that Kenneth Clare, the Arthur Young partner in charge of the Sun Savings account, developed a close personal relationship with Dierdorff, and that the two traveled occasionally to Las Vegas at Sun Saving's expense. It alleges the FHLBB insisted that Sun Sav-

ings dismiss Arthur Young as its auditors because of this relationship.

Nonetheless, this complaint identifies no acts falling outside the scope of the single audit Arthur Young conducted in 1983. Rather, each alleged act is intimately connected to performance of that audit. There is no allegation that Arthur Young's knowledge of Dierdorff's fictitious account was gained by performance of any services outside the audit. In fact, according to Blake, this knowledge and the failure to reveal it to the Board of Directors contributed to the audit's impropriety. RICO's pattern requirement cannot be satisfied by bootstrapping Arthur Young's knowledge, gained during and in furtherance of the audit, into predicate acts separate from the final audit certification itself. The two are inextricably connected.

■ Moreover, the personal relationship between Clare and Dierdorff and Clare's subsequent dismissal are not separate wrongful acts in furtherance of a criminal scheme. Rather, they too contribute to the impropriety of the 1983 audit.

Finally, there are no specific allegations of how Arthur Young participated in mail and wire fraud other than the conclusory allegations of a conspiracy and that Arthur Young "made and participated in the making of false financial statements and other public reports." This does not meet the requirement that mail fraud be pled with particularity. *Sun Savings*, 825 F.2d at 195.

Blake has failed to allege adequately two or more predicate acts which would support a RICO claim against the accountants. The district court's dismissal of Arthur Young and Kenneth Clare is affirmed.

### C. *The Attorneys' Liability*

■ Sun Savings' attorneys, Ernest Leff and John Grosvenor, and their law firm, Leff & Mason, contend that the complaint fails to allege a RICO claim against them with the particularity required by Rule 9(b).

---

**2.** In a separate action Sun Savings has alleged that Dierdorff deposited money he received from improper loan kickbacks into this account. *See Sun Savings,* 825 F.2d at 190.

The complaint alleges Leff and Grosvenor, both partners at Leff & Mason, served as legal counsel to Sun Savings. It alleges Leff helped to organize Sun Savings in 1979 and secure the required approvals from bank regulators and that since its organization, Leff has been intimately involved with Sun Savings' affairs. One year after Sun Savings opened, the complaint alleges Leff heralded it as the "preeminent savings and loan in the state."

The complaint alleges, in addition, that Leff served as Dierdorff's personal attorney, in conflict with his duties to Sun Savings and its shareholders. It also alleges that as of September 1983, Leff owned 5000 shares of Sun Savings guarantee stock and that on or about October 2, 1984, Leff represented that Greenfield Partners was expected to add "a couple of hundred million dollars" to Sun Savings' deposit base.

The complaint also alleges generally that Leff, Grosvenor, and Leff & Mason held positions of influence in Sun Savings and had access to Sun Savings' confidential records, which disclosed its true financial condition and its violations of state and federal laws. It alleges Leff & Mason reviewed Sun Savings' reports and releases to its shareholders, thus participating in the making of false statements regarding Sun Savings' financial condition.

While some of these allegations do not deal specifically with mail or wire fraud, they do link Leff & Mason and Ernest Leff closely to Sun Savings' management. Leff was involved on a continuing basis with Sun Savings from its inception and had a stake in its success. He made statements promoting it.

RICO, at 18 U.S.C. § 1962(c), provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

The allegations against Leff and Leff & Mason are sufficiently particular to show they may have conducted or participated, either directly or indirectly, in the issuance of false financial statements, press releases, and reports by Sun Savings.

*Grosvenor*

 The complaint alleges with respect to Grosvenor individually only that he "participated in the wrongs complained of herein and *later* joined Sun as its in-house counsel." Complaint at 9 (emphasis added). His acts as an attorney for Sun Savings as a partner at Leff & Mason are unspecified, unlike those allegations against Leff. The allegations provide Grosvenor with no information on what, if anything, he did wrong as in-house counsel for Sun Savings. There are no specific allegations about his individual knowledge of or participation in any fraudulent scheme.

The allegations against Grosvenor are not pled with the particularity Rule 9(b) requires. The complaint fails to state a RICO claim against him.

## CONCLUSION

The dismissal of defendants Arthur Young & Company, Kenneth Clare, Van D. Greenfield, and John Grosvenor on the RICO claims is affirmed.

The dismissal of defendants Daniel W. Dierdorff, Harry L. Summers, Tadashi Fujita, John McKenna Case, Allan Koljonen, Richard C. Raimann, Leff & Mason, Ernest Leff, and Sun Savings and Loan Association is reversed and the case is remanded for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.