**ROLEX EMPLOYEES RETIREMENT TRUST, Philip Schmidt, Trustee, on behalf of itself and all others similarly situated, Plaintiff,**

v.

**MENTOR GRAPHICS CORPORATION, Thomas H. Bruggere, Gerald H. Langeler, David C. Moffenbeier, Brian C. Henry and Marvin S. Wolfson, Defendants.**

**Civ. No. 90–726–FR.**

United States District Court,
D. Oregon.

Oct. 29, 1990.

Gary I. Grenley, Michael C. Zusman, Grenley, Rotenberg, Laskowski, Evans & Bragg, P.C., Portland, Or., Max W. Berger, Joel R. Laitman, Bernstein Litowitz Berger & Grossmann, New York City, for plaintiff.

Barnes H. Ellis, Lois O. Rosenbaum, Anton U. Pardini, Stoel Rives Boley Jones & Grey, Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

The matter before the court is the motion (# 15) of defendants, Mentor Graphics Corporation (Mentor Graphics), Thomas H. Bruggere, Gerald H. Langeler, David C. Moffenbeier, Brian C. Henry, and Marvin S. Wolfson, to dismiss the uncertified class action complaint of plaintiff, Rolex Employees Retirement Trust (Rolex); to dismiss the first claim for failure to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b); and to dismiss the second claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

In its complaint, Rolex states two claims for relief.[1] In its first claim, Rolex alleges that defendants violated sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j and 78t, and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. In its second claim, Rolex alleges the common law tort of negligent misrepresentation.

## ALLEGATIONS OF THE COMPLAINT

Mentor Graphics designs, manufactures, markets, and services electronic design automation (EDA) software and systems. Mentor Graphics' software is integrated with workstations manufactured by Hewlett–Packard, and in the future will also be available on the workstations of Sun Microsystem. In addition to its corporate office in Beaverton, Oregon, Mentor Graphics has sales and support offices located throughout the world. Based on 1989 revenue, Mentor Graphics is the world's leading supplier of EDA systems and the world's fourth largest supplier in the design automation industry. Rolex purchased 500 shares of common stock in Mentor Graphics on June 7, 1990 for $24.25 per share.

Defendant Thomas H. Bruggere was, at all times relevant to this complaint, Chief Executive Officer of Mentor Graphics and

---

1. Rolex has voluntarily withdrawn its third claim for relief.

a member of its board of directors. He owns 494,366 shares of common stock in Mentor Graphics. Defendant Gerald H. Langeler was, at all times relevant to this complaint, President and Chief Operating Officer of Mentor Graphics and a member of its board of directors. He owns 530,700 shares of common stock in Mentor Graphics. Defendant David C. Moffenbeier was, at all times relevant to this complaint, Executive Vice President of Mentor Graphics and a member of its board of directors. He owns 305,484 shares of common stock in Mentor Graphics. Defendant Brian C. Henry was, at all times relevant to this complaint, Vice President and Chief Financial Officer of Mentor Graphics and has served as an officer of Mentor Graphics since 1984. Marvin S. Wolfson was, at all times relevant to this complaint, Product Group Vice President of Mentor Graphics and has served as an officer of Mentor Graphics since 1987.

On January 11, 1990, Mentor Graphics announced two moves to "solidify Mentor's leadership in electronic automation ... in the 1990s": 1) the acquisition of Silicon Compiler Systems Corp. (SCS); and 2) the selection of Sun Microsystems, Inc. (Sun) as Mentor Graphics' second workstation platform. Rolex Complaint, p. 10.

On January 30, 1990, Mentor Graphics announced fourth quarter earnings for 1989 of $0.32 per share. Bruggere stated that he was pleased with the fourth quarter performance of Mentor Graphics. Bruggere concluded his comments by saying: "Our view overall in 1990 is that we think it's going to be a tough first half, and we are treating things conservatively. In the second half, things will perk up as we go into 1991." Rolex Complaint, p. 10. On January 31, 1990, the price of Mentor Graphics' stock fell 2⅛ points per share to 15⅝ in heavy trading.

Mentor Graphics' stock continued to trade at the reduced price of between $15 and $16 a share until March 2, 1990. On February 28, 1990, Bruggere stated that while profits would take a "one-time charge" in the first quarter of 1990 to cover expenses related to the Mentor Graphics–SCS merger, Mentor Graphics would post 1990 earnings between $1.25 and $1.30 per share. Bruggere said: "Some people have us at $1.50 (a share for 1990), and we think that's aggressive in terms of the economy. Some have us at $1.10, which is rather conservative.... The $1.25-to-$1.30 range, I think that's the range we would feel more comfortable with." Rolex Complaint, p. 12. Mentor Graphics' stock prices responded favorably after the announcement by Bruggere on February 28, 1990. The price rose to $18 per share on March 2, 1990, on trading of 2.5 million shares.

On or about March 30, 1990, Mentor Graphics released its 1989 Annual Report which contained a Letter to Shareholders signed by Bruggere, Langeler, and Moffenbeier. The letter referred to the "very strong financial position" of Mentor Graphics which would insulate the company from "the vagaries of a U.S. economy which may well be sluggish through the first half of 1990." Rolex Complaint, p. 13. The letter also announced that Mentor Graphics had received the largest order in its history in the first quarter of 1990. The letter indicated that the order was based in part on the Mentor Graphics–SCS merger and was a reflection of the general success of the merger.

On April 20, 1990, Mentor Graphics announced its 1990 first quarter earnings of $0.26 per share. In the announcement, Mentor Graphics concluded that without the costs of the merger with SCS, the earnings would have been $0.32 per share, higher than the first quarter of 1989. Bruggere announced that the board of directors had approved a quarterly cash dividend of $.05 per share. Following these statements, the price of Mentor Graphics' stock rose from $19 per share on April 19, 1990 to $25.75 per share on June 6, 1990.

On July 3, 1990, Mentor Graphics announced its 1990 second quarter earnings of only $0.05 to $0.10 per share. In conjunction with the release of these figures, Bruggere stated that Mentor Graphics "expects third quarter results to be similar to that of the second quarter, with most of

the same issues that hurt the second quarter continuing ... it may be more realistic to look for substantive recovery in either the first or second quarter of 1991." Rolex Complaint, p. 16. Mentor Graphics' Company Release, quoted in Business Wire on July 3, 1990 and attributed to Bruggere, stated:

> [W]e have been aware, and have cautioned our stockholders—particularly over the past four quarters—that this is an industry which is subject to significant change; indeed, we have cautioned that 1990 would be a difficult and challenging transition year for Mentor Graphics: a year in which there would be increased risk that order volume could be disrupted. In the past, we have frequently enjoyed significant business late in the quarter. This has allowed us to meet our revenue and earnings objectives. That surge of orders did not materialize in the second quarter of 1990. There are many potential causes for our disappointing performance.... Right now it is difficult to know which have the most impact. Certainly, the overall economic climate is not a favorable one for us right now. Many of our customers—particularly those in the aerospace and computer industries—are experiencing a slowdown in their businesses, and so in turn are deferring capital expenditures. This is a time of change in the design automation industry, and change always brings with it the potential for cautionary behavior by our customers. In the case of Mentor Graphics, there are several changes occurring simultaneously, and I suspect that it is a combination of these that has contributed to our results in the second quarter.

Rolex Complaint, p. 17.

In response to this announcement, on July 3, 1990, the price of Mentor Graphics' stock dropped $4⅜ per share to $17⅝ per share on a volume of approximately 5.6 million shares and reached a low of $16.50 per share on July 5, 1990.

Defendants Langeler, Moffenbeier, Henry, and Wolfson sold some of their stock in Mentor Graphics in the weeks before the announcement of July 3, 1990. On May 3, 1990, Langeler sold 25,000 shares for $21.70 per share. On May 14, 1990, Moffenbeier sold 10,000 shares for $23.75 per share. On May 11, 21, and 23, 1990, Henry sold a total of 15,334 shares for prices ranging from $23.88 to $24.18 per share. On April 25 and May 23, 1990, Wolfson sold 12,000 shares for prices ranging from $19.46 to $23.95 per share.

Rolex alleges:

1) that Mentor Graphics had no reasonable basis to project conservative earnings of $1.25—$1.30 per share for 1990; that Mentor Graphics knew or should have known that order slowdowns, costs associated with product development, and delays in the integration of the products of Mentor Graphics with Sun workstations would have a dramatic and negative effect on the company's earnings for 1990;

2) that Mentor Graphics misled the investing public into believing that the 1990 first quarter earnings of $0.26 per share would be the lowest for the year when Mentor Graphics knew or should have known that earnings for the second quarter and the remainder of 1990 would be disappointing;

3) that Mentor Graphics knew or should have known that customer orders were substantially reduced and that this reduction in orders would have a dramatic effect on second quarter and full year earnings for 1990;

4) that Mentor Graphics knew or should have known that Hewlett–Packard was going to introduce new products which would have a negative effect on customer orders until such products were actually introduced;

5) that Mentor Graphics knew or should have known that the lack of integration between the products of Sun and Mentor Graphics would cause a slowdown in customer orders;

6) that each individual defendant was responsible for the public disclosures of the company and was a "control person" with respect to the company;

7) that as a result of the dissemination of false and misleading information by Mentor Graphics, the price of stock in Mentor Graphics was artificially inflated from April 20, 1990 to July 3, 1990. Rolex relied on the integrity of the market and the accuracy of this price when it purchased stock in Mentor Graphics on June 7, 1990. Had Rolex known the adverse information not disclosed by Mentor Graphics, it would not have purchased the stock at the artificially inflated price; and

8) that Rolex has been substantially damaged by the losses it suffered because of the non-disclosure of Mentor Graphics.

## CONTENTIONS OF THE PARTIES

*Claims Under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b–5*

Mentor Graphics contends that the claim of Rolex for relief under the federal securities laws fails to comply with the pleading requirements set forth in Federal Rule of Civil Procedure 9(b). Mentor Graphics advances four arguments in support of this contention: 1) Rolex has qualified its fraud claim with the assertion that it is made "upon information and belief;" 2) Rolex fails to identify where or to whom various allegedly fraudulent statements were made; 3) Rolex has not identified what makes the allegedly fraudulent statements false; and 4) Rolex fails to identify the material, non-public, adverse information upon which the individual defendants relied in selling their stock between April 25, 1990 and May 23, 1990.

Rolex contends that its complaint satisfies Rule 9(b). Rolex argues that 1) in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of all of the facts constituting the wrongdoing so fraud may be alleged "upon information and belief" as long as there is a statement of facts upon which the belief is founded; 2) the false statements alleged need not be particularized to individual defendants because where corporate fraud is alleged, a presumption of collective action may be inferred; 3) the complaint identifies the fundamental and undisclosed business problems known to defendants which rendered the earnings projections for 1990

completely unrealistic; and 4) the complaint clearly identifies the non-public, material, adverse information known to the individual defendants at the time of the sale of their Mentor Graphics' stock.

*Claim for Common Law Negligent Misrepresentation*

Mentor Graphics contends that Rolex cannot state a claim for common law negligent misrepresentation because this tort is not recognized under the laws of the State of Oregon. Mentor Graphics further contends that even if the State of Oregon did recognize such a tort, Rolex has failed to state a claim which satisfies the elements of the tort.

Rolex counters that the Oregon Supreme Court recognizes the tort of negligent misrepresentation, and that it has stated a claim upon which relief can be granted.

## APPLICABLE LAW

■ Federal Rule of Civil Procedure 9(b) sets forth the special requirements for pleading fraud. It provides that the circumstances constituting fraud or mistake shall be stated with particularity, while malice, intent, knowledge and other conditions of the mind of a person may be averred generally.

For purposes of a motion under Fed.R. Civ.P. 12(b)(6), the court views the complaint in the light most favorable to the plaintiff and must generally accept as true the facts alleged. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). The court should dismiss a complaint for failure to state a claim only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## ANALYSIS AND RULING

*Count I—Claims Under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b–5 Promulgated Thereunder Against All Defendants*

■ Federal Rule of Civil Procedure 9(b) applies to securities actions brought under

Section 10(b) and Rule 10b–5. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433 (9th Cir.1987). A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud such that the defendant can prepare an adequate answer based on the plaintiff's allegations. *Id.* This requirement is usually satisfied by statements indicating the time, place, and nature of the alleged fraudulent activities. *Id.*

■ Allegations of fraud based on "information and belief" usually do not satisfy the degree of particularity required under Rule 9(b); however, this rule may be relaxed as to matters particularly within the knowledge of the opposing party. *Wool v. Tandem Computers*, 818 F.2d at 1439. For example, in cases involving corporate fraud, where the plaintiffs cannot be expected to have personal knowledge of the facts constituting wrongdoing, the particularity requirement may be satisfied if the allegations are accompanied by statements of fact upon which the belief is founded. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989)(citing *Wool v. Tandem Computers* at 1439).

■ Rolex prefaces its entire complaint with the statement that the allegations contained therein are based "upon information and belief." Rolex Complaint, p. 1. Rolex claims that Mentor Graphics and each of the individual defendants in their capacities as officers of Mentor Graphics have violated the federal securities laws. The complaint can be fairly characterized as alleging corporate fraud. Rolex states the facts upon which its belief is founded. Complaint, pp. 9–20. Under the rule announced in *Wool v. Tandem Computers* and restated in *Kayport*, the use of the term "information and belief" in the complaint does not violate the specificity requirement of Rule 9(b).

■ Fraud claims must be especially carefully pled where there are multiple defendants. *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986). The plaintiff must allege the identity of the person making the false representation. *Id.* However, in cases of

corporate fraud, where false or misleading information is made in prospectuses, registration statements, annual reports, press releases or other group published information, it is reasonable to presume that these statements represent the collective actions of the corporate officers. *Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir.1988). Where the plaintiff alleges corporate fraud, the particularity requirement of Rule 9(b) is met by pleading misrepresentation with particularity and where possible, indicating the roles of the individual defendants in each misrepresentation. *Id.*

The Ninth Circuit explained the application of the corporate fraud doctrine under Rule 9(b) in *Wool v. Tandem Computers*, 818 F.2d at 1440. *Wool v. Tandem Computers* involved an action by a class comprised of stock purchasers against a corporation and its officers. The individual defendants were a narrowly defined group of officers who had direct involvement in the management of the company, and particularly in the preparation of its financial statements. Based upon this fact, the court held that the complaint satisfied the pleading requirements of Rule 9(b), despite the fact that the complaint failed to attribute particular fraudulent statements or acts to each individual defendant.

■ The complaint of Rolex names Mentor Graphics and five corporate officers as defendants. Rolex alleges, and for the purposes of this motion this court must accept those allegations as true, that each of the individual defendants participated in the day-to-day management of Mentor Graphics. Rolex indicates that each of the alleged misrepresentations was made in some form of "group-published" information. *Wool v. Tandem Computers* at 1440. Rolex has alleged that Bruggere made most of the announcements on behalf of the company, and that Bruggere, Langeler, and Moffenbeier signed one of the alleged misrepresentations. Based on the reasoning in *Wool v. Tandem Computers*, Rolex has sufficiently individualized the role of each defendant under Rule 9(b).

Mentor Graphics contends that the claim of Rolex is prohibitively vague as to what made each of the alleged misrepresentations false or what material, non-public information the individual defendants knew and used when they sold their stock. Mentor Graphics relies in part on *Gilbertson v. Leasing Consultants Assocs.*, Civil No. 86–1369–RE (D.Or. June 17, 1987), in support of this contention. In *Gilbertson*, the complaint was dismissed for failure to comply with Rule 9(b). The complaint, which named several distinct corporate defendants, alleged fraud only in the most general terms, for example, "preparing and knowingly allowing the issuer to disseminate false and misleading projections of future earnings."

The complaint of Rolex stands in sharp contrast to the inadequate complaint of *Gilbertson.* Rolex has identified specific statements which it alleges were false. Rolex has identified the date on which these statements were made. To the extent possible, Rolex has identified the role of each of the individual defendants in making each alleged misrepresentation. In paragraph 40 of the complaint, Rolex has enumerated the specific facts upon which it bases its claim that Mentor Graphics knew or should have known what made each of the alleged representations untrue. These are the same facts which constitute the material, adverse, non-public information which Rolex claims the individual defendants used in selling their stock.

The court holds that Rolex has pled its first claim for relief with the particularity sufficient to satisfy Rule 9(b).

*Count II—Claims for Common Law Negligent Misrepresentation Against all Defendants*

■ Except in matters governed by the federal constitution or by acts of Congress, the law to be applied in any case is the law of the state; there is no general federal

common law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The claim of Rolex for common law negligent misrepresentation must be cognizable under the laws of the State of Oregon to withstand Mentor Graphics' motion to dismiss.

The Oregon Supreme Court has not affirmatively recognized the tort of negligent misrepresentation. *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or. 151, 156, 742 P.2d 1176 (1987).[2] Thus, the elements of a successful claim for negligent misrepresentation under the laws of the State of Oregon have not been established. *Duyck,* 304 Or. at 156, n. 3, 742 P.2d 1176. Clearly, any claim which sounds in negligence under Oregon law will have as two of its elements "duty" and "breach of that duty." In Oregon, "duty" is the formal link between the conduct of the defendant and legal liability. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 4, 734 P.2d 1326 (1987).

Assuming that the Oregon Supreme Court ultimately recognizes a claim for negligent misrepresentation, the liability of a defendant will be limited by the scope of his duty. Those courts which recognize the tort of negligent misrepresentation define duty according to one of three standards: foreseeability, privity, and the theory of liability set forth in the Restatement (Second) Torts § 552(1) (1977). *Duyck,* 304 Or. at 158, 742 P.2d 1176. In *Duyck,* the Oregon Supreme Court indicated that if it was to recognize such a tort, more than foreseeability would be required to establish liability for purely economic damage. As Judge Juba noted in *In re Melridge, Inc. Securities Litigation,* Civil No. 87–1426–JU (D.Or. Aug. 11, 1988), this interpretation of *Duyck* is consistent with the holding in *Hale v. Groce,* 304 Or. 281, 284, 744 P.2d 1289 (1987), that for a stranger to recover for purely economic loss, the plaintiff's

---

2. Over the past five years, this court has twice dismissed claims for negligent misrepresentation for failing to state a cause of action under Oregon law—*Thompson v. New York Life Ins. Co.,* Civil No. 85–1001–LE (D.Or. Dec. 19, 1985), and *Dixon v. New York Life Ins. Co.,* Civil No. 84–1323 (D.Or. Mar. 8, 1985), and has three times held that such a claim is cognizable under the laws of the State of Oregon—*Classic Leasing Co. v. Marathon Farms, Ltd.,* Civil No. 86–391 (D.Or. Feb. 26, 1987), *Walsh v. Emerson,* Civil No. 88–952–DA, and *Bouchard v. Emerson,* Civil No. 88–1367–DA, 1990 WL 47319 (D.Or. Jan. 19, 1990).

harm must be more than merely foreseeable.

If the Supreme Court of the State of Oregon ultimately recognizes the tort of negligent misrepresentation, the duty of the defendants to the plaintiff must be established under the traditional test or some form of section 552. *In re Melridge* at 9. The traditional test requires some conduct on the part of the defendants linking them to the plaintiff, which evinces the defendants' understanding of the plaintiff's reliance. *Duyck*, 304 Or. at 158, 742 P.2d 1176 (citing *Credit Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)). Rolex has alleged no such conduct on the part of Mentor Graphics and has failed to establish the sort of direct nexus between the parties necessary to establish a duty under the traditional test.

To recover purely economic damages under the theory of liability stated in the Restatement (Second) Torts § 552(1), the plaintiff must be a member of a limited group for whose benefit and guidance the defendant supplies the information.[3] Comment h to section 552 provides that the intended class is "distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and [foreseeably] to take some action in reliance upon it." *In re Melridge* at 10. Several courts have held that purchasers of publicly traded stocks do not constitute a "limited group" under section 552. *See, e.g., In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 596–97 (E.D.Mich.1985).

▮ Rolex brings this complaint on behalf of the "[c]lass consisting of all persons who purchased the common stock of Mentor during the period April 20, 1990 through July 3, 1990." Rolex Complaint, p. 7. Mentor Graphics had no duty to provide guidance to potential investors in its stock, and none of the statements which Rolex has alleged are misrepresentations are the type of statements upon which a prudent investor would solely and justifiably rely in deciding to purchase stock. The only statements made by Mentor Graphics which might be actionable under a claim of negligent misrepresentation are the statements in the Letter to Shareholders. However, this Letter to Shareholders is dated March 30, 1990, a time prior to the commencement of the class period. The only class which would conceivably have a claim for negligent misrepresentation based on this letter is the class of existing shareholders which received this letter.

The court need not and does not answer the question whether the tort of negligent misrepresentation is recognized under the laws of the State of Oregon. The court holds that even if such a claim were recognized, Rolex has failed to state the elements necessary to recover under such a claim.

### CONCLUSION

Defendants' motion to dismiss the complaint of Rolex is denied as to Count I of the complaint and granted as to Count II of the complaint.

---

**3.** Section 552(1) of the Restatement (Second) Torts (1977) provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.