The UNIVERSITY OF MARYLAND AT BALTIMORE; Andrew R. Burgess, M.D.; Sea Quest Inc., for themselves and all others similarly situated; The School Board of Palm Beach County, Florida, for themselves and all others similarly situated

v.

PEAT, MARWICK, MAIN & COMPANY

Constance B. Foster, Insurance Commissioner of the Commonwealth of Pennsylvania, as Rehabilitator of The Mutual Fire, Marine and Inland Insurance Company, Intervenor (in District Court),

The University of Maryland at Baltimore; Andrew R. Burgess, M.D.; Sea Quest, Inc.; and The School Board of Palm Beach County, Florida; and Richard A. Brown, Esq.*; and Spiegel & McDiarmid *, Appellants.

No. 91–1889.

United States Court of Appeals, Third Circuit.

Argued May 4, 1992.

Decided June 22, 1993.

---

* Pursuant to F.R.A.P. 12(a).

John W. Frazier, IV (argued), John E. Caruso, Richard G. Placey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Leonard P. Novello, Claudia L. Taft, Frances J. DiSarro, KPMG Peat Marwick, New York City, for appellee.

Susan H. Malone, Richard DiSalle, Roger Curran (argued), Rose, Schmidt, Hasley & DiSalle, Pittsburgh, PA, James S. Gkonos, Mut. Fire, Marine & Inland Ins. Co., Philadelphia, PA, for intervenor.

Jeffrey R. Babbin, Richard A. Brown, Spencer L. Kimball, Spiegel & McDiarmid, Washington, DC, Robert S. Kitchenoff, David H. Weinstein (argued), Harold E. Kohn, Kohn, Klein, Nast & Graf, Philadelphia, PA, for appellants.

Before: BECKER, SCIRICA ** and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

When Mutual Fire, Marine & Inland Insurance Company went into statutory rehabilitation, it triggered various insolvency proceedings and suits in state and federal courts, and satellite litigation concerning the conduct of some attorneys in the proceedings. The Commonwealth Court of Pennsylvania dealt primarily with Mutual Fire's insolvency. While that was progressing, four individually named plaintiffs filed a class action in federal district court against Peat, Marwick, Main & Company, alleging that Peat Marwick performed materially deficient audits of Mutual Fire. The plaintiffs pleaded various causes of action based on state law and a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*

The attorneys who instituted this action, Richard Brown and his law firm Spiegel & McDiarmid (the plaintiffs' attorneys), had participated in Mutual Fire's rehabilitation proceedings. Since they were bound by various supervisory and confidentiality orders issued by the Commonwealth Court in the insolvency proceedings, and since they may have violated these orders by filing this action, the Insurance Commissioner of Pennsylvania, acting in her capacity as Mutual Fire's statutory receiver, brought state contempt proceedings against them.

After we reversed the district court's decision to abstain under the *Burford* abstention doctrine, the district court denied the plaintiffs' motion for Rule 11 sanctions and their attorneys' motion for injunctive relief against the state contempt proceedings. It then

granted Peat Marwick's motion to dismiss the complaint for failure to state a claim. The plaintiffs and their attorneys appeal. We will reverse that portion of the district court's order dismissing the state claims with prejudice and affirm the balance.

### I.

In 1986, the Commonwealth Court ordered Mutual Fire into rehabilitation and appointed the Insurance Commissioner as statutory receiver. The rehabilitation order prohibited any actions against Mutual Fire or its property in any court in Pennsylvania.

At the request of five corporate policyholders, two of whom were represented by Attorney Brown, the Commonwealth Court established a Committee of Policyholders and authorized the Committee's costs, including attorney's fees, to be charged to Mutual Fire's estate. The court later issued a supervisory order declaring its exclusive jurisdiction "to hear and determine all disputes concerning claims and the collection of assets of Mutual Fire." It also issued a confidentiality order requiring all information submitted by Peat Marwick to "be used solely for purposes of the Mutual Fire rehabilitation and/or liquidation proceedings." Attorney Brown was bound by this order.

Attorney Brown and the accounting firm of Price Waterhouse, whom he had hired as a consultant, investigated the claims against Peat Marwick. He and Price Waterhouse submitted bills in excess of $2 million to Mutual Fire's estate. The Commonwealth Court eventually dissolved the Committee, concluding that its costs to the Mutual Fire's estate could no longer be justified. *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 132 Pa.Cmwlth. 196, 572 A.2d 798, 810–11 (1990).

In 1988, the Insurance Commissioner, Constance Foster, filed a Praecipe for Writ of Summons against Peat Marwick in connection with its audits of Mutual Fire's books. She selected the law firm of Rose, Schmidt, Hasley & DiSalle to prosecute the action.

---

** This case was originally argued before the panel of Judges Becker, Nygaard and Higginbotham on May 4, 1992, and the panel was reconstituted to the panel of Judges Becker, Scirica and Nygaard since Judge Higginbotham retired after the argued date.

Rose Schmidt filed a complaint with the Commonwealth Court, alleging that Peat Marwick improperly reported Mutual Fire's financial conditions for several years and estimating shareholders' damages to be over $350 million.

In 1989, without notice to the Commonwealth Court or the Commissioner, the plaintiffs' attorneys filed this class action against Peat Marwick on behalf of the University of Maryland at Baltimore, Andrew Burgess, M.D., Sea Quest, Inc., and the School Board of Palm Beach County, who collectively sought to represent some 20,000 Mutual Fire policyholders. The plaintiffs alleged that Peat Marwick performed materially deficient, false and misleading financial audits of Mutual Fire and without reasonable basis certified Mutual Fire's financial statements. Those statements represented that Mutual Fire was adequately financed when it was not. The Commissioner filed a similar suit in the Commonwealth Court against Peat Marwick on behalf of, among others, Mutual Fire and its policyholders for breach of contract, negligence, malpractice, and misrepresentation. The plaintiffs then amended their complaint to allege negligence per se, fraud, negligent misrepresentation, negligence, actions in concert, and a violation of RICO.

The Commissioner simultaneously sought leave to intervene in the district court, and filed a petition in the Commonwealth Court for a rule upon plaintiffs' attorneys to show cause why they should not be held in contempt for filing this federal suit, which she contended violated the supervisory and confidentiality orders of the Commonwealth Court.

After the district court allowed the Commissioner to intervene, there was a flurry of motions for various forms of relief. The Commissioner moved to dismiss the action based on a purported conflict between the federal and state proceedings. Peat Marwick moved to dismiss the amended complaint on the basis of, among other things, the statute of limitations and failure to state a claim. The plaintiffs' attorneys moved to enjoin the state contempt proceedings against them.

The district court granted the Commissioner's motion to dismiss based on the *Burford* abstention doctrine and denied the plaintiffs' attorneys' motion for an injunction as moot. *University of Maryland v. Peat, Marwick, Main & Co.*, 736 F.Supp. 643 (E.D.Pa.1990). It did not rule on Peat Marwick's motion to dismiss. On appeal, we ruled that the *Burford* abstention doctrine did not apply. We vacated the district court's abstention order and remanded the case. *University of Maryland v. Peat, Marwick, Main & Co.*, 923 F.2d 265 (3d Cir. 1991).

On remand, Peat Marwick and the Commissioner, through Richard DiSalle of Rose Schmidt, again moved to dismiss, and the plaintiffs again moved to enjoin the state contempt proceedings. The plaintiffs also moved for Rule 11 sanctions against Attorney DiSalle on the basis that we had in the first appeal considered and rejected the merits of the Commissioner's renewed motion to dismiss.

The district court denied the Commissioner's motion to dismiss. It also denied the plaintiffs' motion for sanctions and the plaintiffs' attorneys' motion for an injunction, believing that the pleadings "bear a closer resemblance to a retaliatory strike against Brown's assorted foes than a serious motion for relief." It granted Peat Marwick's motion to dismiss because it opined that the RICO and state law claims were time-barred. Alternatively, it reasoned that the negligence claim was too attenuated to make out the necessary causation and reliance and that the RICO claim failed to allege a pattern of racketeering activity.

## II.

 Whether the district court properly dismissed the plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a RICO claim is subject to plenary review, and we apply the

same standard as the district court. *Sames v. Gable*, 732 F.2d 49, 51 (3rd Cir.1984). We construe the complaint liberally and take all material allegations as admitted. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). All reasonable inferences are drawn in favor of the plaintiffs. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3rd Cir.1987). We will not affirm the dismissal unless the plaintiffs could prove no set of facts that would entitle them to relief. *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3rd Cir. 1984).

The essential facts pleaded are the following. Peat Marwick was Mutual Fire's independent auditor, and it issued unqualified auditor's opinions on Mutual Fire's financial statements for the fiscal years ending December 31, 1979–84. The last opinion was issued before June 30, 1985. These opinions informed the public that Peat Marwick had a reasonable basis for concluding that Mutual Fire's financial statements were accurate and that Mutual Fire was well-financed. In fact, the financial statements were false and misleading; liabilities were more and assets were less than reported. Peat Marwick ignored numerous signs of Mutual Fire's precarious financial condition and had no reasonable basis to issue the unqualified opinions. The policyholders directly and indirectly, through their brokers and agents, chose Mutual Fire because they relied "substantially" on a "B+" rating from A.M. Best Company, the leading insurance rating company. Best relied "primarily" on Mutual Fire's financial statements, and Mutual Fire in turn depended heavily on a favorable rating from Best. On June 18, 1985, Best assigned Mutual Fire a "no rating." In June 1986, Mutual Fire stopped paying claims, and in December of that year it was placed in rehabilitation.

Based on these allegations, the plaintiffs try to make out a RICO violation. Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly,

in the conduct of such enterprise's affairs through a pattern of racketeering activity." Although a plaintiff must successfully plead many elements to bring a civil RICO claim, for the purposes of this appeal we need only consider whether Peat Marwick "participated" in the affairs of Mutual Fire, the alleged RICO enterprise.

We believe that *Reves v. Ernst & Young*, —— U.S. ——, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), is dispositive. Ernst & Young engaged in activities related to the valuation of a gasohol plant on the yearly audits and financial statements of a farming cooperative. Because the firm concluded for accounting purposes that the co-op owned the gasohol plant from the beginning of construction rather than having purchased it later, the assets of the co-op were inflated. Although the solvency of the co-op depended on this conclusion, the firm did not tell the co-op's board of directors of its conclusion or that without that conclusion the co-op was insolvent. The co-op as a result went bankrupt, and the trustees sued the accounting firm. The Court of Appeals for the Eighth Circuit summarized the accounting firm's involvement with the co-op as "limited to the audits, meetings with the Board of Directors to explain the audits, and presentations at the annual meetings." *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1324 (8th Cir.1991).

The Supreme Court addressed the validity of the Eighth Circuit's "operation or management" test of participation in the affairs of an enterprise. Although RICO liability does not inure simply to those with primary responsibility for the enterprise's affairs, just as it is not limited to those with formal positions in or those in the upper echelon of an enterprise's management, the Court concluded that "to conduct or participate" in the affairs of a RICO enterprise one must, in some capacity, direct the affairs of the enterprise. —— U.S. at ——, 113 S.Ct. at 1170. It endorsed the "operation or management" test as sufficiently expressing the element of direction in an easy-to-apply formula. *Id.* Under this test, not even action involving some degree of decisionmaking constitutes

participation in the affairs of an enterprise. The accounting firm in *Reves* made a critical, erroneous decision that affected on the solvency of the co-op and did not tell the board of directors about it, thus prompting the dissent to characterize the firm as "functioning as the Co-op's *de facto* chief financial officer." *Id.* at ——, 113 S.Ct. at 1177 (Souter, J., dissenting). Yet, even this decision-making did not rise to the level of directing an enterprise.

■ The plaintiffs first contend that the *Reves* test applies only in a summary judgment context because it dealt with "the quantum of proof necessary to find that an auditor actually participated in the conduct of its client's affairs." We disagree. The *Reves* Court nowhere suggested that the "operation or management" test is limited to the summary judgment context. In fact, the Court of Appeals for the Eighth Circuit first announced that legal standard in a motion to dismiss. See *Bennett v. Berg,* 710 F.2d 1361 (8th Cir.1983) (*en banc*). Other courts have applied various legal standards for participation and have dismissed complaints for failure to satisfy those standards. *See, e.g., Blake v. Dierdorff,* 856 F.2d 1365, 1371 (9th Cir.1988); *Occupational Urgent Care Health Sys., Inc. v. Sutro & Co., Inc.,* 711 F.Supp. 1016, 1026–27 (E.D.Ca.1989); *Plains/Ana-darko–P Ltd. Partnership v. Coopers & Lybrand,* 658 F.Supp. 238, 240 (S.D.N.Y.1987). We see no reason why we should not apply the *Reves* test on a motion to dismiss.

■ The plaintiffs primarily contend that they have sufficiently alleged that Peat Marwick participated in the affairs of Mutual Fire. They aver the following to show the relationship between Peat Marwick and Mutual Fire: (1) Peat Marwick performed deficient audits and issued unqualified auditor's opinions; (2) Peat Marwick personnel attended a number of meetings of Mutual Fire's board of directors; and (3) Peat Marwick performed other accounting and consulting services from time to time, including services related to the computerization of certain accounting functions, to the purchase of an interest in a building occupied by Mutual Fire, and to the valuation and sale of a Mutual Fire reinsurance subsidiary. The *Reves* Court made clear that merely performing financial services and attending board meetings do not show that Peat Marwick was participating in the affairs of the enterprise.

■ The plaintiffs contend, however, that the additional services provided by Peat Marwick, such as computerization of accounting services and financial services in connection with the purchase of real estate and sale of a business, push its conduct over the threshold to participation in the affairs of an enterprise. We disagree. These services, like the audits, were merely financial services provided for Mutual Fire, just as lawyers or computer technicians may have provided valuable, indispensable services. Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result. There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus. In other words, the person must knowingly engage in "*directing* the enterprise's affairs" through a pattern of racketeering activity. *Reves,* —— U.S. at ——, 113 S.Ct. at 1170 (emphasis added).

The plaintiffs have nowhere averred that Peat Marwick had any part in operating or managing the affairs of Mutual Fire. Although they make much ado about how important and indispensable Peat Marwick's services were to Mutual Fire, the same can be said of many who are connected with Mutual Fire. Similar to the allegation against the accounting firm in *Reves,* the plaintiffs' amended complaint, when distilled to its essence, is nothing more than an allegation that Peat Marwick performed materially deficient financial services. It cannot be said that by merely performing what are generic financial and related services to an insurance company, even if they are later

found to be deficient, an accounting firm has opened itself to liability under the federal racketeering statute. The district court did not err in dismissing the RICO count.

It is clear that the plaintiffs never pleaded a substantial RICO claim, which was the only claim that conferred federal question jurisdiction. Thus, the district court erred when it dismissed the plaintiffs' state law claims as time-barred. "Since there was no substantial federal claim to which the state claims could be appended, the primary justification for the exercise of pendent jurisdiction was absent." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir.1976).

### III.

We now consider whether it erred by denying the plaintiffs' attorneys injunctive relief from the state contempt proceedings. When the plaintiffs' attorneys filed this action in federal court, the Commissioner brought contempt proceeding in the Commonwealth Court against them on the theory that they, in their capacity as the attorneys for the Committee in the state insolvency proceedings, had violated confidentiality and supervisory orders of that court. The plaintiffs' attorneys contend that the district court erred by refusing to enjoin the state contempt proceedings because the proceedings inhibit the *plaintiffs* from prosecuting their action in federal court. We review the district court's denial of injunction for an abuse of discretion. *Hohe v. Casey*, 868 F.2d 69, 70 (3rd Cir.1989); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3rd Cir. 1984).

The Anti–Injunction Act prohibits federal courts from enjoining state court proceedings unless authorized by Congress or where necessary to protect its jurisdiction or effectuate its judgments. 28 U.S.C. § 2283. The plaintiffs' attorneys rely primarily on *Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), to assert that an injunction is necessary to preserve the district court's jurisdiction over this action. In *Donovan*, the plaintiffs were dissatisfied with the results of a suit brought in state court and filed another action in federal district court. After some procedural maneuvers which are irrelevant here, the state court granted a writ of prohibition to bar the plaintiffs from prosecuting their case in federal court. The Supreme Court articulated a general rule, with exceptions for *in rem* and *quasi in rem* proceedings, that state and federal courts should not interfere with each other's proceedings. 377 U.S. at 412, 84 S.Ct. at 1582. It then held that when Congress grants a right to bring a claim in federal court, a state court cannot take that right away by restraining a federal *in personam* action. *Id.*

Significantly, in *Donovan*, the plaintiffs were being barred from prosecuting their case in federal court. Here, however, the state contempt proceedings are not directed at the litigants, but only at their attorneys. The district court's jurisdiction is not implicated here because nothing prevents the plaintiffs from prosecuting their case against Peat Marwick. The attorneys run for cover behind a shield meant only to protect their clients' access to federal courts and the district court's authority to adjudicate this action.

Also, the state contempt proceedings were brought against the attorneys not in their capacity as attorneys for the federal litigants, but in their capacity as the attorneys for the Committee of the Policyholders in the state rehabilitation proceedings.[1] The attorneys were bound by the Commonwealth Court's confidentiality and supervisory orders. Principles of federal-state comity require that we not interfere with legitimate state contempt and disciplinary proceedings. Otherwise, at-

---

1. This is made manifest by the remedies sought: disgorgement of about $1.5 million in fees paid to the plaintiff attorneys from Mutual Fire's estate before the filing of this action, revocation of Attorney Brown's *pro hac vice* admission to the Commonwealth Court, discontinuation of payment of fees and expenses to the Committee, an order to return all copies of papers and files produced, and any other relief and sanctions the Commonwealth Court finds appropriate.

torneys finding themselves in a predicament because they violated state court orders might avoid disciplinary action by filing a federal suit.

The basic requirements for injunctive relief are a showing of the likelihood of success on the merits and a probability of irreparable harm if an injunction is not issued. *Hoxworth v. Blinder Robinson & Co.,* 903 F.2d 186, 197 (3rd Cir.1990). The district court observed that this "motion in effect would have this court issue an order telling Judge Crumlish [of the Commonwealth Court] that plaintiffs [attorneys] did not violate an order issued by him." It wisely refused to do this. Federal courts are neither the proper forum for attorneys to air their grievances or objections to contempt proceedings brought against them in a state court, nor are we a safety net into which attorneys who find themselves in a predicament with a state court can simply jump. The district court properly denied injunctive relief. *See Machesky v. Bizzell,* 414 F.2d 283, 286 (5th Cir.1969) (district court did not abuse its discretion by denying injunctive relief against state criminal contempt proceedings).

## IV.

We will reverse the district court's order with respect to the dismissal of the state claims and remand with instructions to dismiss them without prejudice. We will affirm the balance of the district court's order, including the order denying sanctions.