[L.A. No. 30556. Nov. 29, 1976.]

OCCIDENTAL LAND, INC., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
FRED FAHNESTOCK, Real Party in Interest.

COUNSEL

O'Melveny & Myers, Allyn O. Kreps, Robert J. White and Matthew T. Kirby for Petitioner.

No appearance for Respondent.

Wenke, Burge & Taylor, John R. Schilling and Daniel Nishiyama for Real Party in Interest.

OPINION

MOSK, J.—We consider whether the trial court abused its discretion in ruling that a group of homeowners in a planned development subdivision may maintain a class action against the developer for fraudulently misrepresenting the cost and extent of maintenance of the project. Applying the principles enunciated in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513], we conclude that the trial court did not err in certifying the action as a class action.

Plaintiffs[1] are the approximately 155 homeowners in the "Garden Homes" portion of the Lake Forest subdivision in Orange County, who purchased their homes prior to August 1, 1971. The subdivision was built as a planned development, and defendant developer was required to file a subdivision public report with the state in order to offer the homes for sale. Each purchaser was obligated to read the report and state in writing that he had done so.

The report, filed in 1968, provided that each homeowner must become a member of the community association, that the association would operate and maintain certain common areas and facilities, and that each owner would be initially assessed $12.99 per lot for this maintenance.[2] The report also declared that expenses of operation were difficult to estimate initially and even if accurately estimated tend to increase with

[1]While this proceeding involves a petition for a writ directed to the trial court, for literary convenience we identify the parties as plaintiff and defendant rather than petitioner and respondent.

[2]The report provides for three different maintenance fees, which vary according to the type of lot purchased. All fees have risen proportionately since 1968, although the precise dollar amount of such increases obviously varies depending on the amount initially assessed. For convenience we will designate the initial fee as $12.99, the amount assessed against the named plaintiff.

inflation and the age of the subdivision. In a separate section of the report entitled "Restrictions," maintenance duties of the individual homeowner were set out, including a provision requiring him to assume responsibility for all landscaping on his property and for common areas less than 25 feet in width located between the boundary line of his property and the adjacent street. Maintenance of common areas wider than 25 feet was made the responsibility of the association.

The complaint alleges that defendant developer fraudulently represented to each plaintiff, orally and in writing, that the association would maintain all grass and planted areas within the cul-de-sacs of the development and along the major streets, that the monthly assessment for maintenance of these areas was to be $12.99, that this figure represented the actual proportionate maintenance cost, and that the assessment would be increased only as a result of inflation or age of the facilities. It is alleged that plaintiffs relied upon these representations in purchasing their homes, that defendant knew the actual maintenance cost to be approximately $40 per lot, and that it concealed the true costs by secretly subsidizing the maintenance expenses in order to induce plaintiffs to purchase their property.

The allegations continue: Before 1971 defendant maintained the landscaped areas along major streets and the grass and planted areas within each cul-de-sac. In August 1971 defendant revealed to plaintiffs that it had been subsidizing the maintenance costs, and presented plaintiffs with an option: either they could receive the same level of services for approximately $40—more than three times the former cost—or they could accept sharply reduced services limited to maintenance of the landscaped areas along major streets at a monthly charge of $20, a 55 percent increase over the prior $12.99 fee. Plaintiffs chose the latter alternative. Consequently, in August 1971 plaintiffs' maintenance fees rose to approximately $20 while services were curtailed.

After a hearing in October 1973, the court certified the action as a proper class action. Defendant's motion for reconsideration was denied several days later. Thereafter, discovery was undertaken by both sides, and in March 1975, defendant filed a motion for an order determining that the action is not a proper class action. In May a second trial judge denied the motion without prejudice. Defendant seeks a writ of mandate to overturn the court's order refusing to decertify the case as a class action.

■ At the outset we face plaintiffs' argument that defendant was guilty of laches in making the motion to decertify almost 18 months after the initial ruling. This contention is without merit.

■ Our decisions clearly contemplate the possibility of successive motions concerning certification. In *Vasquez,* we recognized that the courts should retain flexibility in the trial of a class action, for "even after an initial determination of the propriety of such an action the trial court may discover subsequently that it is not appropriate." *Vasquez* authorized the courts to utilize the procedures in rule 23 of the Federal Rules of Civil Procedure, and observed that a certification order issued under rule 23 "may be conditional and may be altered or amended before a decision on the merits." (*Vasquez* v. *Supreme Court, supra,* 4 Cal.3d 800, 821.)

■ During the months following the court's certification order, defendant conducted discovery proceedings in order to support a motion to decertify the action. It then filed its motion based on evidence not before the court in the prior proceeding. This type of procedure is authorized by *Vasquez.*

We now turn to the merits of defendant's claim that the court's denial of the motion to decertify constituted an abuse of discretion.

■ It is well established that the two basic requirements necessary to sustain a class action are the existence of an ascertainable class and a well-defined community of interest in the questions of law and fact involved. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 809.) It must be shown that a substantial benefit both to the litigants and to the court will result, and the burden of that showing falls on the plaintiff. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701].) ■ Defendant does not dispute that the class herein is ascertainable.[3] The class consists of all homeowners who purchased homes in a specific development prior to August 1, 1971, and class members can be readily identified by a search of public records. However, defendant contends that uncontroverted evidence

---

[3]Defendant does contend that the class is too broad because it includes not only persons who bought their homes directly from defendant but also those who purchased on resale from the original home buyers. But this situation presents no obstacle. If expedient, the trial court may divide the class into subclasses. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 821.)

indicates that questions of law and fact susceptible to common proof do not predominate.

■ In reviewing the ruling of the trial court, we are guided by the principle that the showing required for certification of a class is within the trial court's discretion provided that correct criteria are employed. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199 [112 Cal.Rptr. 144].) ■ Because defendant does not claim that the trial judge used improper criteria in denying its motion, the sole question is whether the court abused its discretion. We find no such abuse.

If plaintiffs' complaint had relied exclusively on the alleged oral misrepresentations of defendant to each homeowner, defendant's challenge to the certification would be arguably meritorious. Unlike the circumstances in *Vasquez,* the present record reveals no standardized, rehearsed sales presentation made to prospective buyers. Nor does the complaint assert that a uniform oral presentation was made to each class member. Therefore, based on the information offered to the trial court, it can be contended that the oral representations alone are not susceptible to proof on a class basis.

But the trial court also had before it the written representations contained in the Final Subdivision Public Report provided to each purchaser of a home. As we have seen, each purchaser was required to sign this report before completing the sales transaction with defendant.

Defendant insists that the report does not contain the misrepresentations alleged in the complaint. It first asserts that plaintiffs incorrectly allege the report recites that assessments will be increased only because of inflation or the increased age of the facilities. Defendant emphasizes in this connection that the report refers to the assessment as an "estimate" and warns that expenses are difficult to determine initially.

The foregoing does not fully and accurately characterize the allegations of the complaint. Although it is true that the complaint avers that defendant had stated only inflation and age would justify an increase, it is also alleged that defendant represented that the $12.99 figure was the "actual maintenance cost of each lot," that this representation was false, and that defendant concealed the fact that it subsidized maintenance costs in order to induce plaintiffs to purchase their homes. Despite the

qualification in the report as to the accuracy of the $12.99 fee, the report must be construed to mean that this sum reflected an honest estimate of the actual current operating cost rather than, as alleged, a lower figure calculated to deceive potential buyers. Thus, the report supports the allegation that $12.99 represented the "actual" maintenance cost at the time of purchase.

Next, defendant asserts that, contrary to the allegations of the complaint, the report does not promise the interior cul-de-sacs will be maintained by the community association but, rather, makes clear that maintenance of such areas is the responsibility of the homeowners themselves. The report is not entirely clear in this regard; one provision implies that all common areas will be maintained by the association, while another states that individual homeowners are responsible for the upkeep of their own property as well as certain portions of the common area.[4] Apparently the association maintained the cul-de-sac areas prior to 1971, although insisting that it was not obliged to do so under the terms of the report. In view of these uncertainties, the question whether the report contains the misrepresentation regarding the cul-de-sacs must be left initially to the determination of the trial court.

But even if the trial court ultimately determines that defendant was not compelled to maintain the cul-de-sacs, the question whether it fraudulently represented the actual cost of maintenance at the time plaintiffs purchased their properties remains an issue common to the class.[5] Thus, we cannot hold as a matter of law that the trial court abused its discretion in determining that at least some of the alleged misrepresentations relied upon in the complaint were made to all members of the class.

[4]On the first page of the report, in bold type, it is declared that the project is a planned development which "INCLUDES COMMON AREAS AND COMMON FACILITIES WHICH WILL BE OPERATED BY AN INCORPORATED OWNERS' ASSOCIATION." In a later portion, under the heading "RESTRICTIONS" the following provision appears: "Each OWNER of property within Single Family Areas shall keep all shrubs, trees, grass and plantings of every kind on his property, including setback areas and planted areas between adjacent sidewalks and the street curb, if any, and on any Common Area located between the boundary line of his property and the street . . . on which such property abuts, neatly trimmed, properly cultivated and free of trash, weeds and other unsightly material; provided, however, that if the width of any such Common Area exceeds 25 feet, the ASSOCIATION and not such OWNER shall be responsible for maintenance of all such Common Area."

[5]Should the court determine that the individual homeowners are liable under the terms of the report for the maintenance of the cul-de-sacs, nevertheless there still remains an increase of approximately $7 over the initial $12.99 assessment which is subject to the allegations of fraud set forth in the complaint.

■ Another contention of defendant is that even if the alleged written misrepresentations were made to each home buyer, a class suit is not appropriate because at trial each plaintiff will be required to separately prove justifiable reliance. This assertion is without merit. The cost of the monthly maintenance fee is manifestly a material factor in planned development and condominium purchases.[6] ■ As we held in *Vasquez,* an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation. That principle controls the present case. ■ Because the purchases made by plaintiffs were acts consistent with their reliance on the subdivision report, we conclude that the trial court did not err in inferring that justifiable reliance may be established on a common basis.

■ Finally, defendant, relying upon *City. of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, asserts that damages may not be established on a common basis because each parcel of land is unique and the diminution in value attributable to each class member's property as a result of the alleged misrepresentations would depend upon such factors as the relative location of the property, the condition of the building, and other factors unique to each parcel.

In *City of San Jose* this court denied class status to persons seeking damages for diminution in market value of real property located in the flight pattern of the San Jose Municipal Airport. The issues presented therein were complex: the questions of liability and damage to each parcel varied since the characteristics of the parcels were dissimilar and the damages were allegedly caused by a multiplicity of factors including noise, vibration, and air pollution. Each parcel of land was affected differently according to its location relative to flight paths, the topography of the land, and the physical condition of each structure.

In contrast, the problems of liability and the calculation of the diminished value of each parcel in the present case do not depend upon such variables because plaintiffs do not allege damage to their land as such. Consequently, the uniqueness of each parcel presents no obstacle to class treatment. Plaintiffs allege a standard claim of allegedly

---

[6]Defendant argues that the materiality of its alleged representation depends on highly particularized proof of each individual's financial status. We have found no authority for this novel proposition. Requiring proof of this nature would necessarily preclude the certification of virtually all class actions based on allegations of fraud. Our decision in *Vasquez* repudiates such a concept.

fraudulent representations, the terms of which are common to the class. They seek compensation for the diminution in the value of their homes resulting from the overall reduction and increased cost of maintenance services. ■ The damages sought may be calculated according to a standard formula based upon the difference between the promised maintenance costs and the costs now required to be paid by plaintiffs. Therefore, the mere fact that this dispute involves the cost of maintaining real property presents no obstacle to a determination of damages on a class basis.[7]

Under all the circumstances we hold the trial court did not abuse its discretion in refusing to decertify this action as a class action.

The alternative writ of mandate is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[7]Defendant also contends that the trial court erred because plaintiffs failed to show that it is "impracticable to bring all members of the class before the court." (Civ. Code, § 1781, subd. (b)(1).) The federal courts have interpreted a similar provision of rule 23 of the Federal Rules of Civil Procedure to mean that impracticability does not mean impossibility but only that it would be difficult or inconvenient to have all members of the class come before the court individually. (*Carey* v. *Greyhound Bus Co., Inc.* (5th Cir. 1974) 500 F.2d 1372, 1381; *Harris* v. *Palm Springs Alpine Estates, Inc.* (9th Cir. 1964) 329 F.2d 909, 913-914; *Forbush* v. *Wallace* (M.D.Ala. 1971) 341 F.Supp. 217, 220.) As the alleged class of homeowners in the present case consists of more than 150 individuals, the trial court did not abuse its discretion in determining that it would be impracticable to bring all class members before the court individually.