## In re ADOBE SYSTEMS, INC. SECURITIES LITIGATION.

**This Document Relates to All Actions.**

**No. C 90 2453 SC.**

United States District Court, N.D. California.

March 1, 1991.

1025

David B. Gold, San Francisco, Cal., for plaintiff.

Jeffrey S. Facter, Shearman & Sterling, San Francisco, Cal., for defendant.

## ORDER RE MOTION TO DISMISS SECOND AMENDED CONSOLIDATED COMPLAINT

CONTI, District Judge.

### I. Introduction

This matter is presently before the court on defendants' motion to dismiss plaintiffs' Second Amended Consolidated Class Action Complaint ("Complaint"), filed on November 2, 1990. Plaintiffs' Complaint is a class action [1] on behalf of those who bought the stock of Adobe Systems, Inc. ("Adobe") between March 6 and May 24, 1990 ("the Class Period"). It alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b–5 thereunder ("Rule 10b–5"), and violations of California fraud and negligent misrepresentation laws. Plaintiffs allege that Adobe artificially inflated the price of its stock by issuing false or misleading public statements during the Class Period.

In addition to Adobe, the Complaint names as defendants certain of its officers and directors ("Individual Defendants"): John E. Warnock ("Warnock"), Chairman of the Board and Chief Executive Officer and a Director of Adobe; Charles M. Geschke ("Geschke"), President and Chief Operating Officer and a Director of Adobe; M. Bruce Nakao ("Nakao"), Vice President of Finance and Administration, Chief Financial Officer, Treasurer and Assistant Secretary of Adobe; and Stephen A. Mac-

Donald ("MacDonald"), Senior Vice President, International Systems Division of Adobe.

Defendants move this court to dismiss Plaintiffs' Second Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). They claim that dismissal is warranted because the Complaint identifies only two alleged false and misleading statements, neither statement of which is actionable under the federal securities laws.

### II. Background

Adobe was founded in 1982 and manufactures and develops software for the computer industry. Prior to the Class Period, Adobe enjoyed consistent growth due in large part to the wide acceptance of its main product, the PostScript interpreter. The PostScript interpreter is the page description language for electronic printing and publishing and computer displays, and is usually implemented in a "controller" which controls an associated printer or other output device. Adobe licenses the PostScript interpreter to original equipment manufacturers ("OEMs"), who incorporate Adobe's technology and pay Adobe a royalty based on the volume of printers or other incorporating devices sold to end users. Adobe's three major customer OEMs are Apple Computer ("Apple"), IBM, and NEC; their combined royalties represent 30 to 40% of Adobe's total revenues.

On March 20, 1990, Adobe announced its results for the first fiscal quarter of 1990, ending February 1, 1990. Sales were up 46% from the first fiscal quarter of 1989, and net income increased 45% over the prior year. Earnings per common share were 48 cents, up 50% from the 32 cents earned in the first fiscal quarter of 1989. Following the announcement, the price of Adobe stock dropped $3.75. Mr. Nakao told the Dow Jones News Wire that he was surprised by the market's reaction, attributing it to concerns that some estimates for 1990 earnings were too high. Nakao also said he "didn't bless" one analyst's esti-

---

1. Plaintiffs' motion for class certification is still pending and is scheduled for hearing on April 5, 1991.

mate of net income of $2.25 per share for the year, preferring a "consensus estimate of $2.10."

A Dow Jones News Wire reports that on May 2, 1990, Dr. Warnock stated at the Hambrecht & Quist 18th Annual Technology Conference that "Adobe will continue to demonstrate solid rates of growth, although the growth rate has slowed recently as the company gets larger and its markets mature." Warnock also said that "Adobe's technologies were becoming entrenched as standards in the information processing industry." He stated that Adobe's successes had resulted "despite a lot of competitive threats from very big companies, [which] shows that we're an extremely competitive company and that we respond to competitive threats in a very aggressive way." Further, "we think there are lots of opportunities for future growth. One of the things that hasn't happened in our business yet is we haven't seen the impact of Hewlett–Packard Shipping. They actually are going to start shipping cartridges for the Laser Jet III this month and we'll start to see some of that coming through." Finally, he said, "we're really just getting started with the IBM printers, we're getting started with a number of OEMs and Apple continues to be about 24 to 25% of our business with their LaserWriter sales, which haven't slowed down."

On May 24, 1990 Adobe announced that earnings for the second quarter of fiscal 1990, ending June 1, 1990, would be lower than previously expected. On May 25, before the stock market opened, Adobe announced estimated revenues in the range of $33 to $36 million and earnings per share in the range of 29 to 37 cents.[2] It stated that three of its significant customers had reduced product shipments. After the market opened later that day, the price of Adobe stock dropped over 15 points, or around 30% of its value, from $50.50 per

share to $35.25 per share at the close on May 25.

Immediately thereafter plaintiffs brought this action, alleging the following in their Complaint: During the Class Period between March 6, 1990 and May 24, 1990, defendants conditioned the market to believe and expect that Adobe would continue to report steady growth in earnings per share throughout fiscal 1990. In order to maintain a false impression of continued growth, defendants disseminated false and misleading statements to the investing public regarding Adobe's future prospects, thereby inflating stock prices or maintaining them at inflated levels. When Adobe disclosed that, based on preliminary estimates, earnings for the second fiscal quarter (March, April and May) would be significantly lower than expected, the price of the common stock dropped over 30%. During the Class Period the Individual Defendants, as corporate insiders, collectively sold over 211,000 shares of the Company's common stock, obtaining aggregate proceeds exceeding $8,158,745.

At the heart of defendants' motion to dismiss is the Complaint's specific allegation that Adobe misled the market with its public statements by failing to disclose adverse information that: Adobe's relationship with Apple was "substantially deteriorating;" Adobe was having problems with the manufacture and initial marketing of several new PostScript products; Adobe's system of internal financial and accounting controls was materially deficient; and Adobe had "no reasonable basis for its statements regarding its forecasts and projections."

### III. Legal Standard for Motion to Dismiss

The Ninth Circuit has reviewed the standard for a motion to dismiss:

> ... a complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

---

**2.** On May 25, before the stock market opened, Adobe corrected its press release of May 24, based on faulty information from Apple, which had stated that revenues from Apple in Adobe's second quarter were "down substantially" from the first quarter. The revised estimates were: $33 to $36 million in revenue instead of $32 to $35 million, and 29 to 37 cents per share earnings instead of 27 to 35 cents.

claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–102, 2 L.Ed.2d 80] (1957).

A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. 2A J. Moore, *Moore's Federal Practice* ¶ 12.08 at 2271 (2d ed. 1982). *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984). In determining a motion to dismiss, "all the allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." Moreover, "to dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987).

## IV. Analysis

### A. *Rule 10b–5 Allegations*

Defendants move to dismiss plaintiffs' Rule 10b–5 allegations on the grounds that the Complaint fails to identify any Adobe statement that is false and misleading. To state a claim under Rule 10b–5, plaintiff must allege defendant has made "an untrue statement of material fact" or omitted "to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5.

Plaintiff's Complaint points to several statements concerning Adobe which plaintiffs allege were false or misleading, and thus violative of Rule 10b–5: 1) the Complaint cites the March 6, 1990 statement of Adobe's Chief Financial Officer Nakao to market analysts that Nakao was comfortable with analysts' estimates that Adobe's first quarter fiscal 1990 net income would fall in the mid–40 cents per share range; 2) Dr. Warnock's statement that a recent announcement from IBM about its intended use of Adobe technology would increase the market for Adobe products in the fu-

ture; 3) Adobe's March 20, 1990 announcement of its results for the first quarter of fiscal 1990; 4) Nakao's quote, discussed above, in a Dow Jones wire story that he "didn't bless" one analyst's estimate of $2.25 per share earnings for 1990, but "preferred" a "consensus estimate of $2.10;"[3] 5) specific statements in Adobe's Form 10–Q and Report to Shareholders for the first quarter ended March 2, 1990, filed with the SEC and issued on April 13, 1990; and 6) Warnock's statement to institutional investors on May 2, 1990, described in detail above.

Plaintiffs claim that these public announcements, financial reports, SEC filings, analysts' reports, interviews, articles and shareholder reports were each materially false and misleading in that they failed to disclose the following adverse information: 1) that Adobe's relationship with Apple Computer and other OEM customers was substantially deteriorating in the near term, which Adobe knew or should have known because it was aware of lower product shipments by these customers which would reduce royalty payments; 2) that the introduction of new Adobe products was delayed and that sales of existing products were off as Adobe's customers awaited the availability of the new products; 3) that Adobe's system of internal financial and accounting information controls was materially deficient, affecting such information in Adobe's public releases and reports; and 4) that Adobe had *no reasonable basis* for its statements regarding its forecasts and projections of continued success and growth, given its problems in royalty sales and completion of new lines of products.

### 1. Mr. Nakao's Statement

■ Defendants move to dismiss first on the grounds that Mr. Nakao's statement of March 20, 1990 that he "didn't bless" one analyst's earnings estimate of $2.25 for fiscal year 1990 and instead "preferred" the "consensus estimate of $2.10" is not actionable because it did not constitute a projection made by Adobe.

---

**3.** Plaintiffs claim that since Adobe earned 48 cents in the first quarter of fiscal 1990, Mr. Nakao's endorsement of the $2.10 per share estimate for the entire year indicated that Adobe expected to earn in excess of 50 cents a share in each of the remaining quarters.

Liability attaches under Rule 10b–5 for making "any untrue statement of material fact." Defendants admit that liability may be premised on false and misleading forecasts or projections, as such forecasts may be regarded as "facts" within the meaning of Rule 10b–5. *Marx v. Computer Sciences Corp.*, 507 F.2d 485, 489 (9th Cir. 1974).[4] However, they claim Nakao and Adobe never adopted or made any projections for Adobe's fiscal year 1990 earnings. Dismissal under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that plaintiff can prove no set of facts entitling her to relief." *Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d 187, 191 (9th Cir.1987). The reasonable interpretation by securities analysts, institutional investors and the market in general of a public statement by a top corporate official such as Nakao requires the weighing of all relevant evidence. *See, e.g., Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 164 (2d Cir.1980).

The court finds that whether Nakao adopted analysts' statements regarding Adobe's future earnings sufficiently to impose Rule 10b–5 liability on defendants is a factual question to be resolved in light of surrounding evidence. The court recognizes defendants' argument that corporations need some legal guidelines as to what actions rise to the level of corporate "projections," thereby triggering securities disclosure requirements. The SEC has encouraged stock issuers to supply information to the market as a check on the information that may be disseminated by less well-informed sources such as analysts. Defendants assert that an overly broad legal definition of an actionable projection would stop companies from communicating with the public and with analysts for fear that even noncommittal or deflationary remarks could be painted as "projections" which would survive a motion to dismiss and subject the company to expensive, time-consuming litigation.

However, the court feels that it is important to balance these concerns against Rule 10b–5's goal of preventing false and misleading statements. Rule 10b–5 emphasizes the need to protect the securities markets from false and misleading information and to hold companies accountable to shareholders and the market. For the courts to best effectuate the purposes of the federal securities laws and to uphold the procedural standard of Fed.R.Civ.P. 12(b)(6), cases must not be dismissed as non-actionable where facts could be proved which would reveal false or misleading statements.

Nakao's intended or understood message to the market is unclear from his statement alone. It could be taken by a reasonable investor to be cautionary, and yet still be overly optimistic and misleading. At this stage of the litigation, on the evidentiary record now before the court, the court cannot rule that the statement was not false or misleading, as it is still entirely possible that plaintiffs could prove a set of facts entitling them to relief. As such, this aspect of the Complaint survives defendants' motion to dismiss.[5]

▪ Defendants also claim that plaintiffs' Rule 10b–5 claims should be dismissed because scienter is not adequately pled. The court finds that plaintiffs have adequately pled scienter under Rule 10b–5. Scienter, although an element of a Rule 10b–5 claim which must ultimately be proved in order to prevail, may be averred generally in the pleading stage, where the complaint alleges that deceptive information was disseminated which falsely portrayed the company's financial condition. *Blake v. Dierdorff*, 856 F.2d 1365, 1370 (9th Cir.1988); *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985). Plaintiffs allege scienter in the Complaint sufficient to meet the Rule 10b–5 requirements.

### 2. Dr. Warnock's Statement

▪ Second, defendants base their motion to dismiss on the grounds that the

---

**4.** Whether a forecast or prediction is "untrue" turns on whether Adobe or Nakao believed or had reason to believe that the earnings would be in that amount. *See Id.*

**5.** The court's ruling at this juncture of the litigation is not, however, to be taken as a sure indication of how it would rule on a motion for summary judgment as to the same issue.

statement of Adobe Chairman Dr. Warnock on May 2, 1990 is not actionable because plaintiffs allege no facts that would render any portion of it false or misleading. Defendants take each sentence uttered by Dr. Warnock in turn and point to plaintiffs' failure to allege that it is false and misleading. However, defendants' analysis of the Complaint misconstrues the test for Rule 10b–5 liability.

■ Rule 10b–5 makes actionable material omissions. The test for whether an omission is material is whether failure to disclose the omitted information would influence the decision of a reasonable investor. *See Marx v. Computer Sciences Corporation, supra,* 507 F.2d at 492. Specifically, "when an earnings forecast is made, such facts should be disclosed as are necessary to allay any misleading *impression* thereby created." *Id.* (emphasis added). In addition, an omission found to be "material" might be actionable even if the earnings forecast turned out to be substantially correct, if such omission created an erroneous impression of the health of the company and concealed certain pitfalls. *Id.* at 492 fn. 12. Whether the failure to disclose certain facts or any partial combination of them is an omission "to state a material fact necessary in order to make the statements made … not misleading" is a factual determination properly left to the jury. *Id.* Only if a disclosure is so obvious that reasonable minds cannot differ is the issue appropriately resolved as a matter of law. *See, e.g., Durning v. First Boston Corp.,* 815 F.2d 1265, 1268 (9th Cir.1987), citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

In the present action, on the evidentiary facts now before the court, the disclosure or lack thereof is not so obvious as to be grounds for a motion to dismiss. The court finds that under certain sets of facts, Warnock's statement could be found by a trier of fact to create a misleading impression due to a material omission. The Complaint alleges that Warnock's May 2 statement created a misleading impression by being falsely optimistic about Adobe's second quarter earnings. It claims defendants knew or should have known that, due to the alleged delay in new product lines, and related dropoff in royalty payments by OEMs, second quarter earnings would be flatter than Warnock made them out to be. Had reasonable investors known of these facts about Adobe's delays and lower royalties alleged by plaintiffs, their decision to invest in Adobe stock might have been affected.

■ Furthermore, Rule 10b–5 does not require a plaintiff, as a matter of pleading, to "link" every omission with an allegedly misleading statement. "Linking" is necessarily a factual determination, to be made after discovery. *See Fine v. Rubin,* 623 F.Supp. 171, 172–73 (N.D.Cal.1985). Defendants' arguments that the alleged omissions were actually disclosed is an argument going to the sufficiency of the disclosure, and is therefore an argument concerning the *materiality* of the alleged statements, an inherently fact-specific inquiry. *Basic, Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 983, 99 L.Ed.2d 194, 211 (1988). The court finds the Complaint withstands defendants' motion to dismiss on these grounds.

### B. *Fraud and Negligent Misrepresentation Allegations*

Defendants argue that plaintiffs' state law claims should be dismissed for lack of pendent jurisdiction. Since the court has found that plaintiffs' federal law claims are sufficiently pled, it finds that pendent jurisdiction still obtains as to the state law claims, which arise from the same facts and circumstances as the federal law claims. *See Ohashi v. Verit Industries,* 536 F.2d 849, 854 n. 2 (9th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 616 (1976).

■ Defendants argue that the negligent misrepresentation claim should be dismissed in any event for failure to state a claim. As this court has noted before, in California the standard of *Goodman v. Kennedy,* 18 Cal.3d 335, 134 Cal.Rptr. 375, 556 P.2d 737 (1976) applies to determine the liability of director and officer defendants.

*In re Worlds of Wonder Securities Litigation,* 694 F.Supp. 1427 (N.D.Cal.1988). Under *Goodman,* liability for negligent misrepresentation can only attach if defendants owed a duty to plaintiffs to avoid the wrongdoing. The determination of duty under *Goodman* is a question of law which requires balancing the following factors: 1) the extent to which the transaction was intended to affect the plaintiffs; 2) foreseeability of harm to plaintiffs; 3) degree of certainty that plaintiffs suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to the defendants' conduct; and 6) the policy preventing future harm.

In this case, on balance, the court finds the plaintiffs have alleged these factors sufficiently to withstand a motion to dismiss. Plaintiffs allege that defendants acted improperly during the Class Period to keep the price of Adobe stock artificially high. They allege defendants knew or should have known that their activity would cause plaintiffs tangible harm, indicating foreseeability and a close connection to the harm. The artificially high stock price alleged would ensure certain injury to the plaintiffs, and plaintiffs allege morally blameworthy insider trading. As to policy, the court is aware that frivolous suits may inhibit corporate directors and officers from speaking out at all, with the adverse effect of limiting the amount of public information about a company's well-being. However, as discussed above, it also recognizes the need to hold directors and officers to the highest standards of accountability to shareholders in performing their duties. Accordingly, the negligent misrepresentation claim here also survives the motion to dismiss.

Finally, defendants claim plaintiffs fail to state a claim for common law fraud because fraud on the market allegations are insufficient for pleading reliance. However, in California, "an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance on the representation." *Occidental Land,*

*Inc. v. Superior Court,* 18 Cal.3d 355, 134 Cal.Rptr. 388, 556 P.2d 750 (1976). Plaintiffs' allegations meet this standard, so their common law fraud claim may stand.

V. Conclusion

In accordance with the foregoing, IT IS HEREBY ORDERED that defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.