[No. B208730. Second Dist., Div. One. May 26, 2010.]

GEORGE BOMERSHEIM et al., Plaintiffs and Appellants, v.
LOS ANGELES GAY & LESBIAN CENTER, Defendant and Respondent.

1474

COUNSEL

Law Office of Nicholas A. Boylan, Nicholas A. Boylan; Speckman & Associates and David L. Speckman for Plaintiffs and Appellants.

Carroll, Kelly, Trotter, Franzen & McKenna and David P. Pruett for Defendant and Respondent.

OPINION

**CHANEY, J.**—In this negligence case the trial court denied plaintiffs' motion to certify a class, finding no community of interest existed and the class action vehicle was not a superior method of resolving the claims of putative class members. Because we conclude the order is based on improper

criteria and is not supported by substantial evidence, we reverse and direct the trial court to grant the motion.

## FACTS AND PROCEEDINGS BELOW

The following allegations, facts, and evidence are drawn from the fifth amended complaint, the motion seeking leave to file the fifth amended complaint, and the motion to certify a class.

Defendant Los Angeles Gay & Lesbian Center (defendant or the Center) provides medical services in Los Angeles County. From January 1999 to March 2004 defendant treated with Bicillin C-R more than 600 patients presenting with confirmed syphilis infection or reported sexual contact with someone who was known or suspected to be infected with syphilis. Bicillin C-R is not recommended for such use. The proper formulation would have been Bicillin L-A. Though both medications contain the same amount of penicillin, Bicillin C-R is a mixture of short- and long-acting penicillin, while Bicillin L-A is composed wholly of long-acting penicillin. Robert Bolan, M.D., the Center's medical director, admitted in deposition that Bicillin C-R "was incorrect for the condition . . . treated."

After defendant learned of its mistake in March 2004, in coordination with the Los Angeles County Department of Health Services and the Centers for Disease Control and Prevention it drafted and issued press releases to advise the public of the error and attempted directly to contact every patient who had been treated to offer retreatment and retesting. To provide consistent information, defendant prepared common language to be included in letters to patients and developed two scripts to be used in telephone calls.

The letter sent to plaintiff Raymundo Aguilar read in pertinent part as follows: "We recently reviewed our records and found that the preparation of penicillin you received at the L.A. Gay & Lesbian Center for treatment of syphilis was below the dosage recommended by the Centers for Disease Control and Prevention (CDC). [¶] To assure that we are addressing this situation, we urge you to come in as soon as possible for evaluation, repeat blood testing and re-treatment. [¶] . . . [¶] We urge you to call [the Center] to schedule an appointment for follow up and more information."

Approximately 442 patients returned to the Center and were offered retesting and retreatment regardless of their medical condition or the retesting

results. Retesting involved a blood draw and, in 19 cases, a lumbar puncture. Retreatment involved receiving between one and three intramuscular injections of Bicillin L-A.

Plaintiffs George Bomersheim, Rox Brassfield, Aguilar, and Odie Rauch were treated with Bicillin C-R and then retested and retreated with Bicillin L-A. They filed this action on March 11, 2005. The fifth amended complaint is operative. In it, plaintiffs allege one cause of action, for negligence. They allege defendant accepted a duty to provide medical care consistent with the applicable standard of care and breached that duty by "negligently administer[ing] the Bicillin C-R." They allege they suffered damages "associated with the notification and retreatment process" and "underwent a retreatment process with proper medication, and thus suffered damages in an amount subject to proof at trial."

Plaintiffs do not seek damages associated with the initial mistreatment.

Bomersheim, Brassfield and Aguilar seek to represent "All California residents who, from 1999 to 2004, received from CENTER an improper dosage of penicillin for the treatment of syphilis, specifically Bicillin C-R, rather than Bicillin L-A, and who therefore underwent the retreatment process, whether at [the Center] or elsewhere." They seek "special and general damages," attorney fees, costs of suit, and any other appropriate relief.

In its answer, defendant denied "each and every allegation" in the fifth amended complaint; denied plaintiffs suffered any injury or loss; if they did suffer injury or loss, denied that the injury or loss was caused "by reason of any act or omission on the part of" defendant; and asserted that any injury or loss was the "natural or expected result of reasonable treatment rendered for the disease or condition."

Soon after filing the complaint, plaintiffs sought to discover treatment and contact information for putative class members and, when defendant resisted, filed motions to compel discovery. Defendant opposed the motions. After several rounds of briefing and the passage of almost two years, defendant apparently made some production, though the record on appeal does not reflect its content.

Plaintiffs moved for certification in August 2007. The motion was supported by plaintiffs' declarations and citations to the deposition testimony of Dr. Bolan and Darrel Cummings, defendant's chief of staff.

Defendant opposed the motion. It argued that because no class representative or putative class member contracted syphilis as a result of administration of "a non-recommended medication," i.e., "a nonstandard dosage" of penicillin, no one suffered "any injury supporting a claim," and because there was an "absence of injury," no class was ascertainable. In support of defendant's "absence of injury" argument, Dr. Bolan declared that blood testing, lumbar puncture and retreatment are "aspects of medical care which are generally considered to be [innocuous] and generally associated with very minimal discomfort or pain." He further declared that no individual reported any untoward effects as a result of the retesting or retreatment. Based on Dr. Bolan's review of the Center's records and his personal performance of about half of the lumbar punctures, no patients reported headaches as a result of the lumbar puncture. Dr. Bolan opined that the inconvenience of returning to the Center for retesting and retreatment was likely minimal in most instances. He represented that no one who returned to the Center had developed syphilis.

Defendant argued causation could not be established on classwide proof because some putative class members, including plaintiffs Aguilar and Rauch, received retreatment from other providers before they discovered they had been mistreated at the Center. Defendant also argued individual issues predominated because the putative class presented "up to 663 claims of convoluted and subjective claims of emotional distress, all based upon variations in individual responses to information that a patient had received a non-standard dosage, had been requested to return for retesting, and had been offered retreatment."

In a supplemental brief in opposition to the certification motion, defendant argued that its only duty to plaintiffs "was treatment of syphilis," and "[i]t is undisputed that the Center complied with its duty for the treatment of syphilis, even though it used a non-standard dosage of medication to do so." As Dr. Bolan declared, " 'there was no evidence of treatment failure.' " Dr. Bolan also declared that "[t]esting following treatment of a syphilis infection is common practice. There are occasions when treatment of syphilis with the recommended medication does not produce results indicating effective treatment. To assess whether treatment has been adequate, such post-treatment tests are an important and usual part of the treatment process."

In their reply, plaintiffs argued they suffered physical injury from the "retesting and hurtful retreatment" process: a second, otherwise unnecessary, series of painful and sickening Bicillin injections. They argued that "[b]y definition, the class is composed of individuals who had to suffer the retreatment process as a direct result of having been administered the wrong medication by Defendant" and describe how the Bicillin L-A injections were painful and made them sick. "Were they given the correct medication in the first instance," plaintiffs argued, they "would not have had to endure the pain, physical changes and distress brought on by the retreatment process." Plaintiffs stated they were not making any damage claim based on the fear of possibly developing a disease.

Plaintiffs' reply declarations described their reactions to retreatment. Each received three intramuscular Bicillin L-A injections over a several week period and experienced aches, sweating, and pain in the injection site.

The declarations were silent as to what reactions plaintiffs had to the administration of Bicillin C-R.

The trial court found the putative class to be ascertainable and sufficiently numerous, Bomersheim and Brassfield presented typical claims, and Bomersheim would adequately represent the class. (The court found Aguilar's claims were "potentially atypical" because he asserted that his syphilis had not been cured by the administration of Bicillin C-R, and thus potentially had a treatment failure claim. The court found Brassfield was not a suitable class representative because he had recently been convicted for possession of methamphetamine with intent to distribute, a felony and crime of moral turpitude. Plaintiffs do not challenge these rulings.)

The trial court found no community of interest existed because individual issues of causation and damages predominated over common issues of duty and breach. It noted that the putative class includes California residents who "received from CENTER an improper dosage of penicillin for the treatment of syphilis . . . and who *therefore* underwent the retesting and/or retreatment process . . . ." (Italics added.) Individuals who underwent the retesting and retreatment process for reasons *other* than having initially received improper treatment, the court observed, presumably "did so because of new syphilis infections or new contacts with persons known or suspected to be infected with syphilis. Under the proposed class definition, they would not [be] eligible to be members of the class," so an "individual-by-individual inquiry" would be required "to determine if they sought re-treatment prior [to] their receipt of the advisory letters (assuming they did receive them)." (Fns. omitted.)

Further, the trial court found that proof of damages for pain and suffering would require the personal testimony of each class member, particularly given that two named plaintiffs claimed to have had transitory physical reactions to the Bicillin L-A injections, one putative representative (Aguilar) apparently had a treatment failure claim, and "[t]he evidence suggests, without clearly proving, that individual reactions to Bicillin L-A vary, and some persons may suffer little or no discomfort, while others may be more severely affected."

The court found class treatment of putative members' claims would not be superior to individual treatment because the amount of damages potentially available—from $8,000 to $18,000, by one estimate—made individual action feasible, especially if more plaintiffs joined the action. And apparently relying on plaintiffs' counsel's representation that defendant had virtually admitted duty and breach of duty, the court found issues of duty and breach could be formally established by admissions or summary adjudication. The court concluded, "While issues of duty and breach of duty present common questions, the issues of causation and damages require individualized testimony from every single putative class member. The individual issues in this case necessarily overwhelm the common issues."

The trial court denied the certification motion on April 16, 2008.

## DISCUSSION

### A. Standard for Certification

■ Under section 382 of the Code of Civil Procedure, a class action is authorized "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court." "The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].)

"As to the ascertainability question, its purpose is ' "to give notice to putative class members as to whom the judgment in the action will be res judicata." [Citation.] "Class members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records. [Citation.]" ' [Citation.] In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members. [Citation.]" (*Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1206–1207 [76 Cal.Rptr.3d 804].)

The "community of interest" requirement embodies three elements: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) Questions of fact and law are "predominant" if the factual and legal issues "common to the class as a whole [are] sufficient in importance so that their adjudication on a class basis will benefit both the litigants and the court." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 811 [94 Cal.Rptr. 796, 484 P.2d 964].)

■ "A class action also must be the superior means of resolving the litigation, for both the parties and the court. [Citation.] 'Generally, a class suit is appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." [Citations.]' [Citation.] '[R]elevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing.' [Citation.] '[B]ecause group action also has the potential to create injustice, trial courts are required to " 'carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts.' " [Citation.]' [Citations.]" (*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101 [13 Cal.Rptr.3d 343].)

### B. *Ascertainability, Numerosity, Typicality and Adequacy of Representation Are Not Disputed.*

As stated, the trial court found the putative class is ascertainable and sufficiently numerous and one class representative, Bomersheim, makes typical claims and is an adequate representative. Plaintiffs make no claim of error in these findings. We thus turn to the trial court's predominance findings.

### C. *Commonality*

■ In denying plaintiffs' motion, the trial court found that common questions did not predominate because each class member would be required to present individual proof relating to causation and damages. " 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' [Citation.] Nevertheless, 'we must examine the trial court's reasons for [denying] class certification.' [Citations.] In particular, we must consider whether the record contains substantial evidence to support the

trial court's predominance finding, as a certification ruling not supported by substantial evidence cannot stand. [Citations.]" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1106 [131 Cal.Rptr.2d 1, 63 P.3d 913] (*Lockheed*).) Even a ruling supported by substantial evidence will be reversed if improper criteria were used or erroneous legal assumptions made. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].) "Any valid pertinent reason stated will be sufficient to uphold the order." (*Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 656 [22 Cal.Rptr.2d 419].)

Every certification inquiry must begin with an examination of plaintiffs' claims. Plaintiffs allege that as a direct and proximate result of receiving Bicillin C-R rather than Bicillin L-A, they "underwent a retreatment process . . . , and thus suffered damages . . . ." They do not allege the original treatment failed, only that because it raised the possibility of failure, retesting and retreatment were required as a prophylactic. Retesting consisted of a blood draw and, in 19 cases, a lumbar puncture. Retreatment consisted of a series of painful injections of Bicillin L-A. To prevail, plaintiffs will have to prove the " 'well-known elements of any negligence cause of action, viz., duty, breach of duty, proximate cause and damages.' [Citation.] [Fn. omitted.] Addressing whether questions common to the class predominate over questions affecting members individually, therefore, required the trial court to consider these elements." (*Lockheed, supra*, 29 Cal.4th at p. 1106.)

### 1. *Duty and Breach*

■ Whether defendant owed a duty of care to putative class members is a question of law for the court. Whether it breached that duty is a question of fact. Defendant proffers no reason why individualized analysis is required to answer either question. As it is undisputed that all putative class members were defendant's patients, all sought treatment for syphilis, and all underwent similar treatment, retesting and retreatment regimens, the trial court rationally concluded the duty and breach elements will be susceptible to common proof.

### 2. *Causation*

■ To establish the third negligence element, causation, plaintiffs will have to demonstrate that administration of Bicillin C-R was a substantial factor in bringing about retesting and retreatment. (See *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049, 1054 [1 Cal.Rptr.2d 913, 819 P.2d 872] [test for establishing cause in fact " 'asks whether the defendant's conduct was a substantial factor in bringing about the injury.' [Citation.]"].) As the trial court recognized, individuals cannot show causation if they sought retreatment for reasons other than the initial mistreatment. This includes patients

who were unaware of the mistreatment and those who, though aware of it, sought retreatment for some other reason. We presume, as did the trial court, that no putative class member was aware of the mistreatment before March 2004, when defendant sent out its advisory communications, and that anyone who sought retreatment before that time will be unable to demonstrate causation.

Before we consider whether causation is susceptible to common proof we must disentangle it from the class definition. According to the definition, plaintiffs seek to represent individuals who received the nonrecommended medication "and who *therefore* underwent the retreatment process, whether at [the Center] or elsewhere." (Italics added.) Plaintiffs argue "[t]he word 'therefore' in the class definition is the causation link, and thus the proposed class definition specifically identifies only those individuals who received retesting and retreatment as a result of the original mistreatment with Bicillin C-R."

■ The purpose of a class definition is not to predetermine causation but to describe the class in such a manner that its members can readily be ascertained. Ascertainability is achieved "by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 915 [107 Cal.Rptr.2d 761].) "Care should be taken to define the class in objective terms . . . , without regard to the merits of the claim . . . . Such a definition . . . avoids problems of circular definitions which depend on the outcome of the litigation on the merits before class members may be ascertained, and does not require the court to engage in an impermissible consideration of the merits of the claims in connection with its class certification determination." (2 Conte & Newberg, Newberg on Class Actions (4th ed. 2002) § 6:14, pp. 614–615.) Subjective definitions " 'frustrate efforts to identify class members, contravene the policy against considering the merits of a claim in deciding whether to certify a class, and create potential problems of manageability.' " (*Id.* at p. 615, quoting Fed. Jud. Center, Manual for Complex Litigation (3d ed. 1995) § 30.14, pp. 217–218.)

Causation is neither an objective characteristic nor a common transactional fact, it is a subjective, ultimate fact. Its inclusion in the definition created a circular designation that interfered with the trial court's commonality analysis, where, focusing on the word "therefore," the court concluded that "[u]nder the proposed class definition, . . ." an "individual-by-individual inquiry" into causation would be necessary to determine "whether any individual actually is a member of the class." This analysis conflated issues of the merits and class membership and strayed from the pertinent inquiry— whether causation is susceptible to common proof.

■ The class definition continues to muddy the predominance analysis on appeal, where plaintiffs argue no causation issue exists because only those individuals whose injuries were caused by mistreatment with Bicillin C-R are members of the class, by definition. The argument is meritless. As in any negligence case, proof of causation will require examination of defendant's actions and evaluation of the reasonably certain consequences of those actions. The issue cannot be waved away in a class definition.

The word "therefore" must be stricken from the definition.

As noted, plaintiffs allege they underwent retesting and retreatment as a result of having originally been mistreated. The court correctly found that individuals who underwent retesting and retreatment for reasons other than having originally been mistreated would be unable to prove causation. The court speculated that other putative class members might have sought retreatment prior to receipt of the Center's March 2004 advisory letters, and an individual-by-individual inquiry would have to be made to determine whether this was the case.

Plaintiffs implicitly argue causation can be established without individual testimony. Though their briefs are unclear, they appear to argue that the chronology of events itself tends to prove, on a classwide basis, that class members received retreatment as a direct result of having initially been mistreated. If this is plaintiffs' argument, we agree with it.

It is not necessary to show an individual's motivation by direct evidence. Whether one party's conduct induced another party's response can often be inferred from the circumstances attending the transaction. For example, in other contexts it is well established that "[w]here representations have been made in regard to a material matter and action has been taken, in the absence of evidence showing the contrary, it will be presumed that the representations were relied on." (27 Williston on Contracts (4th ed. 2003) § 69:32, p. 12; see *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 363 [134 Cal.Rptr. 388, 556 P.2d 750] [fraud; an inference of reliance arises from a showing that representations were "made to persons whose acts thereafter were consistent with reliance upon the representation"]; *Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 814 [fraud; "if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class."]; *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292 [119 Cal.Rptr.2d 190] [consumer action]; see also *People v. Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752] ["intent must usually be inferred from all of the facts and circumstances disclosed by the evidence, rarely being directly provable."].)

An inference of causation arises when a material event impacts an individual whose subsequent actions constitute a reasonable response. In the class context, where individuals are uniformly subjected to a material stimulus and thereafter uniformly act in a manner consistent with a reasonable response, a classwide inference is raised that the stimulus caused the response.

■ Here, putative class members all came to the Center seeking treatment for syphilis, a potentially life-threatening disease. They were given the wrong medication. After being informed that the treatment may have been ineffective, they sought retreatment. A reasonable inference as to the entire class is that the initial mistreatment caused members to seek retreatment. Causation can therefore be presumed on common proof.

Defendant does not disagree, but argues that some individuals underwent retesting and retreatment for reasons other than having originally been mistreated. For example, they argue, Aguilar and Rauch both sought retreatment before being notified of the mistreatment. But " '[t]he fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.' [Citation.]" (*Massachusetts Mutual Life Ins. Co. v. Superior Court, supra*, 97 Cal.App.4th at p. 1292; see *Vasquez v. Superior Court, supra*, 4 Cal.3d at p. 814 ["It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class."].) Defendant further argues that proving causation will require individual-by-individual analysis of the reasons why approximately 200 individuals never returned to the Center for retreatment and why "many who did return to the Center declined retreatment . . . ." We disagree. Because those individuals are not members of the putative class, their actions and motivations are irrelevant.

The trial court erred when it found the issue of causation would not be susceptible to classwide proof.

### 3. *Damages*

Plaintiffs present two negligence claims. Their first claim, for damages resulting from unnecessary retesting, presents a variation of the medical monitoring claim first recognized in *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795]. *Potter* held that "if

additional or different tests and examinations are necessitated as a result of the toxic exposure caused by the defendant, then the defendant bears full responsibility for their costs." (*Id.* at p. 1012, fn. 31.) Here, plaintiffs allege that defendant's failure to treat them correctly necessitated that they undergo an additional medical test and examination, which caused pain and suffering. We express no opinion today on whether such a claim is viable.

Plaintiffs' second claim is for damages resulting from retreatment with Bicillin L-A, which they allege was the proper treatment. Plaintiffs allege this belated but proper treatment was painful and made them sick. As recognized by the trial court, however, this claim does not appear to be cognizable, as plaintiffs would have suffered the same ill effects had they been treated with Bicillin L-A in the first instance. (See *Mitchell v. Gonzales, supra*, 54 Cal.3d at p. 1053 [defendant's conduct is not a substantial cause of harm where the harm would have occurred without it].)

■ The substantive merits of plaintiffs' claim for damages resulting from retreatment are not before us. (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 440–441.) "When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards. Were we to condone merit-based challenges as part and parcel of the certification process, similar procedural protections would be necessary to ensure that an otherwise certifiable class is not unfairly denied the opportunity to proceed on legitimate claims." (*Linder v. Thrifty Oil Co., supra*, 23 Cal.4th at pp. 440–441.) But on remand, the trial court might consider whether the litigation will benefit from a close examination of the viability of plaintiffs' retreatment claim.

At any rate, plaintiffs concede that damages will require individualized proof.

## D. *Predominance*

■ We concluded above that common issues exist as to duty, breach and causation but not as to damages. The next question is whether common issues predominate over individual ones. Common issues predominate when they would be "the principal issues in any individual action, both in terms of time to be expended in their proof and of their importance." (*Vasquez v. Superior*

*Court, supra,* 4 Cal.3d at p. 810.) Class members "must not be required to individually litigate numerous and substantial questions to determine [their] right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 460 [115 Cal.Rptr. 797, 525 P.2d 701].)

Apparently relying on optimistic comments of plaintiffs' counsel to the effect that defendant effectively concedes it breached the duty of care, the trial court found the issues of duty and breach would not require substantial litigation, but "could be formally established by admissions or by summary adjudication." We find nothing in the record to support this finding. At oral argument we asked defendant's counsel directly whether defendant concedes breach of the duty of care. It does not. On the contrary, in its supplemental opposition to the certification motion it explicitly denied it breached any duty, stating, "It is undisputed that the Center complied with its duty for the treatment of syphilis, even though it used a non-standard dosage of medication to do so." Further, in its answer defendant denies "each and every allegation" made by plaintiffs, including allegations of breach. Though defendant admits it mistakenly administered Bicillin C-R, it does not admit this misadministration breached its duty of care. Determining whether it did will likely be a substantial inquiry requiring the assistance of at least one medical expert. (See Evid. Code, § 801, subd. (a) [an expert may give testimony if the subject matter of his opinion "is sufficiently beyond common experience that the opinion of [the] expert would assist the trier of fact."].)

On the other hand, nothing suggests establishing causation will be a major undertaking. As discussed above, causation as to each class member can be presumed on common proof. Though defendant must be given an opportunity to defeat the presumption as to any class member it contends sought retreatment for a reason other than having been initially mistreated, it adduces evidence only as to two such individuals—Aguilar and Rauch. If there are more, it should be a simple matter to ascertain from medical records—most of which defendant already possesses—when most of the class members as to whom causation is disputed received retreatment and whether they indicated they did so for some reason other than the initial mistreatment.

Regarding determination of damages, " 'that each class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action.' [Citation.] Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.] Individual issues do not render class certification

inappropriate so long as such issues may effectively be managed. [Citations.]" (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 334.) "Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage individual questions. [Fn. omitted.] For decades '[t]his court has urged trial courts to be procedurally innovative' [citation] in managing class actions, and 'the trial court has an obligation to consider the use of . . . innovative procedural tools proposed by a party to certify a manageable class' [citations]. [Fn. omitted.]" (*Id.* at p. 339; see *Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at p. 440.) "Such devices permit defendants to 'present their opposition, and to raise certain affirmative defenses.' [Citation.]" (*Sav-On,* at pp. 339–340.)

Plaintiffs propose a number of ways to streamline the determination of damages, including making exemplar findings to establish a range of recovery, utilizing a proof of claim questionnaire, and establishing a special arbitration forum. Defendant offers no response to the proposals, and the trial court made no comment on them other than to note that they may require defendant to waive its right to a jury trial. Plaintiffs' proposals suggest that damages can be determined fairly and expediently. Nothing suggests otherwise. If, after reasonable discovery, it appears that damages in this matter cannot be handled efficiently classwide, the court can divide the class into subclasses or decertify it altogether. (See *Vasquez v. Superior Court, supra,* 4 Cal.3d at p. 821.)

E. *Conclusion*

 Certification is as much for the court's benefit as for the benefit of the parties. It therefore behooves a trial court to satisfy itself early in the proceedings that plaintiffs present cognizable claims, define the proposed class appropriately, and accurately characterize evidence obtained in discovery. Plaintiffs' failure to do so in this case derailed the certification analysis by muddling the issues of ascertainability and causation and leading the trial court to mistakenly assume that defendant admits it breached its duty of care.

As discussed above, issues subject to common proof include those of duty, breach and causation. Though damages are not subject to common proof, they are susceptible to streamlined determination. We therefore conclude class treatment would be a superior method of resolving the claims.

The certification ruling must be reversed. The word "therefore" is to be stricken from the class definition and the trial court is encouraged to satisfy itself as to the viability of plaintiffs' claim for damages resulting from retreatment.

## DISPOSITION

The order denying class certification is reversed. The cause is remanded to the trial court with directions to delete the word "therefore" from the class definition and certify the class. The parties are to bear their own costs on appeal.

Mallano, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied June 17, 2010, and respondent's petition for review by the Supreme Court was denied September 1, 2010, S184174.